WILLIAM D'OENCH, Appellant, v. M. E. GILLIOZ ET AL.—139 S. W. (2d) 921.

Division One, May 7, 1940.

180

*John W. Giesecke, Farrington & Curtis* and *Claude E. Curtis* for appellant.

*James E. Sater* for respondents.

HYDE, C.—This is an action in equity for the declaration of an express trust in certain real and personal property, formerly owned by a banking corporation of which plaintiff was a stockholder, an accounting, removal of officers and directors of the bank, appointment of a receiver, and orders of distribution to plaintiff and other stockholders as alleged beneficiaries. The court sustained defendants' general demurrer to the petition and entered judgment of dismissal, from which plaintiff has appealed.

Plaintiff alleged that he was the owner of 65 shares of the capital stock (total shares were 500) of the Central State Bank of Monett, and stated that this bank's transaction with defendants, upon which plaintiff's claim is based, was as follows:

"Plaintiff further states that said Central State Bank of Monett, · Missouri, desiring to liquidate and cease doing business as a banking institution, did at Monett, Barry County, Missouri, on the 1st day of February, 1930, through and by its president and secretary, who were duly clothed with authority by the board of directors to act on behalf of said bank and by and with consent of the stockholders of the bank, enter into a written contract with the president and secretary of the Monett State Bank and Trust Company of Monett, Missouri, who were duly authorized by the board of directors of said bank to act on behalf of the bank, for the purchase by said Monett State Bank and Trust Company from the Central State Bank of Monett of all of the assets of the latter bank, and for the assumption by the Monett State Bank and Trust Company of all the liabilities of the Central State Bank of Monett, except capital stock liability, which contract was duly signed, sealed, and executed, and which reads as follows:

"Whereas, those owning two-thirds or more of the capital stock of record of the Central State Bank, Monett, Missouri, a corporation organized under the laws of the State of Missouri, and more particu-

larly under the laws relating to the organization of banking corporations, have by an instrument of writing, executed and acknowledged by said stockholders, consented to the *sale of all of the assets* of the Central State Bank, Monett, Missouri, to the Monett State Bank and Trust Company, Monett, Missouri, in consideration of the assumption of all of the liabilities of the Central State Bank, Monett, Missouri, by the Monett State Bank and Trust Company, Monett, Missouri (except capital stock liability), and have authorized its board of directors to enter into a contract for the consummation of said sale, all in accordance with the provisions of Section 1176, Laws of Missouri, 1927, page 232, and

"Whereas, the directors of the Monett State Bank and Trust Company, Monett, Missouri, a corporation organized under the laws of the State of Missouri, and more particularly under the laws relating to the organization of banks, by appropriate resolution have authorized its President and Secretary to enter into a contract with the Director of the Central State Bank, Monett, Missouri, for the *purchase of the assets* of the Central State Bank, Monett, Missouri, and the assumption of its liabilities (except capital stock liability).

"Now, therefore, in consideration of the premises and of the mutual obligations herein referred to, and for other good and valuable considerations hereunto moving them, it is hereby agreed by and between the Central State Bank, Monett, Missouri, party of the first part, and the Monett State Bank and Trust Company, Monett, Missouri, party of the second part, that in consideration of the *transfer of all the assets* of the party of the first part to the party of the second part, a complete list of which is hereto attached and marked 'Exhibit A,' and incorporated herein by reference as though the same were fully set out herein, the party of the second part hereby covenants and agrees to assume and pay all amounts due from said party of the first part to its depositors and all of the creditors, except stockholders for their stock representing the capital of the party of the first part. A list of all amounts due depositors and creditors of record on the books of the party of the first part is hereto attached and marked 'Exhibit B' and incorporated herein by reference as though the same was fully set out herein. And a certified copy of the resolution adopted by the board of directors of the party of the first part, authorizing the execution of this contract, is hereto attached and marked 'Exhibit C;' and a certified copy of the resolution adopted by the board of directors of the party of the second part authorizing the execution of this contract, is hereto attached and marked 'Exhibit D.'

"It is further understood and agreed that, should the Monett State Bank and Trust Company, Monett, Missouri, purchase any notes from the Central State Bank, Monett, Missouri, that have the same maker as notes held by the Monett State Bank and Trust Company, Monett, Missouri, and said maker should make a payment or payments

on such note, then, and in that event, the payment or payments should be proportioned on the notes as held by each bank this date as their interests may appear, except where notes are secured by collateral, mortgage or other security, then, in that event; such payment or payments shall be credited on the unsecured notes by the party of the second part.

"It is especially understood and agreed, and is made a warranty on the part of the party of the first part, that the party of the first part has no liabilities other than those mentioned herein and in exhibit hereto attached.

"This contract shall be effective as of the 1st day of February, 1930, and the party of the second part agrees to assume all liabilities of record on the books of the party of the first part, except capital stock, as of the 1st day of February, 1930, and the party of the first part agrees that the whole of its property and assets of record on its books as of the 1st day of February, 1930, shall be transferred to the party of the second part, and that the schedule hereto attached and marked exhibits actually represent the assets respectively of the party of the first part, other than capital stock liability as of the 1st day of February, 1930.

"It is further agreed that sufficient of the assets purchased, to equal in amount the deposits and other liabilities assumed, shall be carried by the party of the second part as primary assets, and all remaining assets shall be carried as secondary assets, *all the secondary assets to be held as collateral to the primary assets,* for a period of two years, from this date.

"It is further agreed that final and complete settlement shall be made under this contract two (2) years from the date hereof, at which time *the residue, if any, of said secondary assets shall be turned over and delivered to the party of the first part,* for its stockholders." (Italics ours.)

Plaintiff further alleged that "the defendants have paid to the Central State Bank of Monett, Missouri, a dividend (per cent not stated) but have not turned over to said Central State Bank the secondary assets aforesaid nor any profits therefrom that remained on February 1, 1932, but have sold and disposed of part of the profits as well as the secondary assets themselves and have converted the residue to their own use;" that at "the end of the two year period provided for in the contract, the primary assets taken over by the Monett State Bank and Trust Company had not been exhausted and none of the secondary assets, which were held in trust as heretofore stated, had been used and applied to pay the obligations which were secured by the primary assets;" that certain specifically described real estate (which was part of the secondary assets) had, more than two years after the execution of the contract, been improperly and without consideration conveyed by the Central State Bank to the

Monett State Bank, and had been conveyed by the latter to other defendants; and that plaintiff had no adequate remedy at law and brought this action "for the benefit of himself and of all other persons holding shares of stock in the Central State Bank of Monett, Missouri, who are similarly situated, and whose rights are similarly affected, and who may become parties to this action." The allegations of the petition, since a receivership of the corporation is sought, are sufficient to show that the directors of the Central State Bank and the owners of a majority of its stock, who are all made defendants, were parties to the acts against which complaint is made, so it would have been useless for plaintiff to seek action from either directors or majority stockholders; and that the action was brought on behalf of the corporation. [See Caldwell v. Eubanks, 326 Mo. 185, 30 S. W. (2d) 976.] Reference will be made to other allegations, or lack of allegations, later in the opinion. ■ Allegations in the nature of conclusions about the meaning of the contract but inconsistent with its stated terms, of course, cannot be considered.

Plaintiff's contention is that "the agreement set forth in plaintiff's bill created an express trust" in the secondary assets; that "at the end of two years from the date of the contract, the vendor bank was to come into the enjoyment of whatever secondary assets remained;" and that "the reasonable construction of the contract pleaded in plaintiff's bill is that it was the intention of the parties that the secondary assets were transferred to the vendee bank in trust to be dealt with according to the conditions of the contract and were to be returned, if any remained, two years after the contract was executed." In short, plaintiff claims to be entitled to recover because, "at the end of the two year period, the secondary assets had not been exhausted or appropriated."

■ The question to be decided, therefore, is the reasonable construction of this contract. " The terms of this contract are rather indefinite, and, as shown by the italicized portions, there are conflicting provisions which make it ambiguous. While the first part of the contract refers to a sale and purchase of all the assets of the Central State Bank, and the contract provides for transfer of all the assets, a subsequent provision thereof specifically states that assets classified as secondary are to be held as collateral to those classed as primary. Then, after providing for a settlement at the end of two years, it is stated that the residue, if any, of the secondary assets shall be delivered to the vendor. All provisions of this contract must be considered together in the light of the circumstances stated (transfer in order to cease business and liquidate) and the statute authorizing such a transaction. [Sec. 5379, R. S. 1929, 11 Mo. Stat. Ann. 7595.] So considering it, we have this situation, namely: That it was necessary for the vendee bank to immediately assume all liabilities of the vendor bank to depositors and creditors (except to its stockholders

for its capital) and obligate itself irrevocably to pay them when due, and they were of course mostly deposits due on demand; that, to reimburse it for such absolute obligation to pay all liabilities, the vendee bank took full title to assets (listed as primary) of the vendor bank, equal in face value to the total amount of liabilities listed as assumed; that the vendor bank warranted against the existence of any liabilities other than those listed; that the secondary assets (all the remaining assets of the vendor) were transferred to the vendee bank to be held as collateral; and that at the end of two years there should be a final settlement and thereupon the residue, if any, of the secondary assets (which represented its capital) should be returned to the vendor bank for its stockholders.

Plaintiff's theory of express trust seems to be that the principal purposes for placing these secondary assets with the vendee bank were management, safekeeping or collection for the benefit of the vendor. Plaintiff says that the vendee bank had two years "to determine whether it would be necessary to appropriate the secondary assets," apparently arguing that the right of the vendee to retain secondary assets ended in the event that they had not been appropriated to replace uncollected primary assets finally determined to be worthless within the two year period. What if the vendee had been unable to collect some of these primary assets within that time but had reason to expect to realize something more from them, and could not then determine how much? Certainly the provision that the secondary assets were to be held as collateral must have meant something in that situation. What did it mean? It surely meant that they were held to insure vendor that all primary assets could be collected within two years, and as security to indemnify the vendee bank against any loss that would be sustained in liquidating the primary assets. This meant that it had the right to hold all of its collateral until it received full satisfaction for the whole obligation it had become liable to pay, and the reimbursement of which this collateral secured. [See Russell v. Empire Storage & Ice Co., 332 Mo. 707, 59 S. W. (2d) 1061, and authorities cited.] Therefore, the vendor could only be entitled to the return of this collateral, if at the time for final settlement, it had offered to pay whatever amount was necessary to take up all uncollected primary assets. If two years' liquidation of the primary assets had not produced enough to pay the vendee the amount of these obligations, and vendor did not offer to pay them, did not the vendee then have the right to foreclose on its collateral? If not, what good was the provision that such assets were to be held as collateral. Certainly, a mortgage due in two years is not released because the mortgagor fails to pay it before it comes due. On the contrary, security to the mortgagee, in his right to reimbursement, is the reason for the mortgage; and the mortgagee's rights against the security (to proceed to apply it to pay the debt by

means of foreclosure) accrue only when the debt matures. So here, we think the only reasonable construction of the contract is that liquidation of the primary assets, for a period of two years, provided a method of obtaining partial payments upon the obligation of the vendor bank to pay the vendee the total amount of the liabilities it assumed; but that final payment of the balance was made due at the end of two years; and that if liquidation of the primary assets within two years did not produce enough to pay the total amount, then the right accrued to the vendee bank to foreclose, by some appropriate procedure, on the secondary assets held as collateral.

A contention, similar in principle to that made by plaintiff here, was made in Assets Realization Company v. Roth, 226 N. Y. 370, 123 N. E. 743. There a bond was given for security against loss to a bank which assumed the liabilities of another bank and undertook to obtain reimbursement therefor by liquidation of its assets. It was argued that the dissolution of the liquidator leaving assets unliquidated ended liability on the bond, and, as here, that the right to look to this security was terminated by failure to completely and finally determine losses prior to that time. This contention was answered in the clear language of Justice CARDOZO, as follows:

"Loss resulting from the advances was the risk that was in view; protection against such loss the controlling purpose of the bond. (And of holding secondary assets as collateral here.) The moment advances were made, the risk had been incurred, and the duty to indemnify arose. Liquidation was not the act on which the right to indemnity was to depend. Liquidation was merely the means by which the measure of the loss was to be gauged. . . . They (agencies or methods of liquidation) might therefore be any agencies appropriate in that contingency for the ascertainment of the loss. The death of the liquidator did not wipe out the advances, and business men cannot have expected it to wipe out the covenant. If loss could not be ascertained in one way, it would have to be ascertained in another. The last thing they can have expected was that it would not be ascertained at all." [We also ruled a similar situation in Moberly v. Leonard, 339 Mo. 791, 99 S. W. (2d) 58; see also Sturdivant Bank v. Houck (Mo. App.), 47 S. W. (2d) 135.]

Likewise, in this case, the risk in view was loss resulting from becoming absolutely liable to all depositors and creditors of the vendor bank to pay everything due them. This risk had been irrevocably incurred when these liabilities were assumed. Liquidation of the primary assets during the two-year period was the means provided by which the measure of the loss was to be gauged. Failure to collect all primary assets within that time could not wipe out the covenant that the secondary assets were the vendee's collateral to secure it against loss from inability to collect all primary assets. There is no allegation in the petition that the primary assets had been com-

pletely liquidated and had produced enough money to pay the full amount of the liabilities that the vendee had assumed. The statement that these assets "had not been exhausted" is not an allegation that there would be no loss when they were exhausted and there is no such allegation. The statement that none of the secondary assets "had been used and applied to pay the obligations which were secured by the primary assets," is insufficient because the apparent intent of the contract was that they were not to be so used until the primary assets were exhausted so that it could be determined whether there would be a loss. Certainly, it was not intended that they should be used until the two-year period had ended and the liquidation of the primary assets during that time had failed to produce enough to pay these obligations. Neither is there any allegation that there were no other liabilities discovered, in addition to those listed, which would have breached the warranty against additional liabilities contained in the contract. Nor is anything stated as to whether there was or was not any settlement or extension at the end of two years. Not only is there no allegation that the vendor offered to pay what was necessary to then take up uncollected primary assets, but in fact the petition states that the vendor bank had accepted a dividend out of collections from the secondary assets, without information as to amount, after the end of the two-year period. It is also stated that thereafter land, which comprised part of the secondary assets, was conveyed by warranty deed by the vendor bank to the vendee bank. We hold that the allegations of the petition, in view of the contract and circumstances set out, fail to sustain plaintiff's theory of the creation of an express trust; or to show that any cause of action had accrued to plaintiff; but that they do show an agreement for holding the secondary assets as collateral to secure reimbursement to the vendee bank for the full amount of the vendor's liabilities assumed; and that the court correctly ruled the demurrer.

The judgment is affirmed. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.