**Fred SAIGH and Elizabeth Saigh, (Plaintiffs) Appellants,**

**By Relation to ANHEUSER–BUSCH, INC., a Corporation, Nominal Defendant Under Rule 52.04(a),**

v.

**August A. BUSCH, Jr., (Defendant) Respondent.**

No. 31884.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1965.

Rehearing Denied Oct. 20, 1965. Application to Transfer Denied Dec. 13, 1965.

Lon Hocker, Hocker, Goodwin & Mac-Greevy, St. Louis, for appellants.

Mark D. Eagleton, J. J. Thyson, Albert J. Stephan, Jr., Roberts P. Elam, Harry W. Kroeger, Arthur B. Shepley, St. Louis, for respondent.

RUDDY, Judge.

This is a stockholders' derivative action. The petition before us for scrutiny is the second amended petition, as amended by plaintiffs, which is in two counts. The trial court, pursuant to Civil Rule 82.06, V.A.M.R., and to a stipulation signed by all the parties, ordered a separate trial of the issues raised under Count I and further ordered the judgment rendered under Count I, after hearing, to be deemed a final judgment for purposes of appeal within the meaning of § 512.020 RSMo 1959, Vol. 33 V.A.M.S. An appeal by plaintiffs from a judgment adverse to them on Count I of their second amended petition is pending in the Supreme Court of Missouri as Cause No. 50622.

The instant appeal before us is by plaintiffs from a judgment on Count II wherein the trial court sustained the motion of defendant August A. Busch, Jr., to dismiss Count II, and dismissed said Count II "with prejudice."

Following this ruling by the court plaintiffs filed a motion for leave to amend Count II of their second amended petition as amended by them and for a determination of the time within which such amendment shall be made. This motion for leave to amend was overruled.

This suit was instituted by Fred Saigh and Elizabeth Saigh as stockholders of Anheuser-Busch, Inc., as a class action

against August A. Busch, Jr., an individual defendant, and Anheuser-Busch, Inc., a corporation, designated by plaintiffs as a nominal defendant under Civil Rule 52.04 (a). Count I of plaintiffs' action sought to set aside a sale by Anheuser-Busch, Inc., to defendant August A. Busch, Jr., of 26,121 shares of its common capital stock. It was alleged that the sale was made pursuant to an employee stock option contract between the corporation and August A. Busch, Jr.

The general nature of the allegations in Count II, which is the count before us for examination and decision, is that August A. Busch, Jr., as President of the nominal defendant is receiving salary and perquisites which are excessive and not based on the reasonable value of his services as president of the corporation.

Defendant August A. Busch, Jr., (who will be referred to hereinafter as defendant Busch, and Anheuser-Busch, Inc., will be referred to hereinafter as the nominal defendant) by his motion to dismiss attacks the sufficiency of the allegations in Count II of plaintiffs' second amended petition and in support of his motion to dismiss states: "That the plaintiffs failed to allege in Count II of said Second Amended Petition that plaintiffs have sought relief from the other shareholders of the nominal defendant, Anheuser-Busch, Inc., or to state facts showing why plaintiffs failed to seek such relief; that by reason thereof plaintiffs failed to state a cause of action against this defendant under said Count II." As we have said, the trial court sustained this motion and dismissed said Count II "with prejudice." This attack by defendant Busch and the action of the trial court requires an examination of the allegations contained in Count II of plaintiffs' petition. In the interest of clarity and for a better understanding of our ruling, we quote the pertinent parts of plaintiffs' petition related to Count II thereof:

"1. Plaintiffs are and have been since prior to January 1, 1954, the owners of shares of common stock of Anheuser-Busch, Inc., in the following amounts:

| | |
|---|---|
| Fred Saigh | 30,000 shares |
| Elizabeth Saigh | 1,600 shares |

"2. Defendant [Busch] is and at all times set out herein has been President of Anheuser-Busch, Inc., and since April 11, 1956, has been Chairman of the Board of Directors.

"3. It would be useless either to seek the relief called for in this second amended petition by application to the Board of Directors of the nominal defendant or to request of such Board or the officers the consent of Anheuser-Busch, Inc., to join as plaintiff in this action or to seek to enforce the rights set out herein which may properly be asserted by it; and it is therefore joined as a nominal defendant under Rule 52.04(a), Missouri Rules of Civil Procedure.

"4. Plaintiffs bring this action for themselves and in behalf of the class of shareholders of the nominal defendant or so many thereof as are similarly situated to the plaintiffs. The plaintiffs were shareholders at the time of each of the transactions of which they complain. The members of the class of plaintiffs are very numerous, and it would be impracticable to bring them all before this Court, and plaintiffs will fairly insure adequate representation of all.

"5. The nominal defendant, at the instance of the defendant, sold to defendant on July 29, 1960, 21,121 shares, and on August 8, 1960, 5,000 shares of the common stock of Anheuser-Busch, Inc., which had previously been authorized but unissued, without having first offered the same to the plaintiffs and other shareholders, proportionately, and at the price of $25.30 per share, whereas the known market value of such shares on said dates was $34.00.

\* \* \* \* \* \*

## "COUNT II

"9. Plaintiffs reassert as a part of Count II the allegations of Paragraphs 1, 2, 3, 4 and 5 of Count I.

"10. The members of the Board of Directors of Anheuser-Busch, Inc., are selected for nomination and caused to be elected by defendant, and with respect to the compensation and perquisites of the defendant [Busch] and respecting the sale by the nominal defendant of shares of its stock to defendant [Busch] are and at all times mentioned herein have been influenced and controlled by him.

"11. Since January 1, 1954, the nominal defendant has rendered to him, and for him, and to and for members of his family and relatives, benefits in the form of salary, bonuses, stock purchase options, expense allowances not to be accounted for, reimbursements and payments vouchered by him, and by other employees at his direction, rentals, personal club dues and initiation fees, the provision of life insurance, retirement annuity, yachts, private railroad cars, private automobiles, busses, residences, the use of theatre and stadium homes and enclosures, servants, legal and accounting services, materials and supplies, and in the expenditure of large sums of money in promoting and giving publicity to the name of the defendant, and in identifying him in the minds of the public with the ownership of properties and facilities of the nominal defendant and with the donations and benefactions of the nominal defendant, and, as plaintiffs verily believe, in other ways not known to them, in a total amount which is not known to the plaintiffs, and which plaintiffs cannot determine without an audit of the records of the nominal defendant and of the defendant; but which is far in excess of the reasonable value of defendant's services as President of the nominal defendant.

"12. The action desired by plaintiffs could not have been obtained from the shareholders of the corporation;

"(a) for the reason that such action is an action which under the law must be taken by the Board of Directors and is not within the power of shareholders as a body; and

"(b) for the further reason that it was and is impossible for the plaintiffs to secure the election by the shareholders of a different Board of Directors in an effort to obtain the action sought by the plaintiffs:

"i. because the members of the Board of Directors, and especially the individual defendant, as owners, as trustees, and as proxies, have the right to vote very large blocks of stock of the defendant;

"ii. because the Board of Directors and the individual defendant have access to and the use of the funds of the corporation for the purpose of soliciting proxies in behalf of themselves and their own nominees as the management of the corporation, and the prestige which the incumbency of their office gives them as management of the corporation, and thus effectively control the communications between the corporation and its very large number of, and constantly changing list of, shareholders;

"iii. because, notwithstanding repeated requests by individual shareholders, the Directors of the corporation and the individual defendant have refused to register the stock of the corporation on any National Securities Exchange; and therefore the solicitation of proxies by the Directors and the individual defendant is not subject to the limitations of the proxy rules of the Securities and Exchange Commission.

"iv. because, by avoiding the necessity of compliance with the proxy rules

aforesaid, the Board of Directors and defendant Busch escape disclosure to the shareholders of the information required by Schedule 14 A of said rules, including details of the perquisites and remuneration of the directors, including that of defendant Busch.

"v. because by avoiding the necessity of compliance with the proxy rules aforesaid, the Board of Directors and defendant Busch escape the necessity of mailing to shareholders opposition proxies and opposition proxy solicitation material, and the necessity of including propositions of minority shareholders in the proxy solicitation material paid for by the corporation, and the other requirements of the proxy rules designed to facilitate communication between stockholders respecting the necessity for such action as is sought in this matter.

"vi. because of the foregoing, and of the great cost and necessary ineffectiveness of a personal proxy solicitation at individual expense, in opposition to a management solicitation at corporate expense, especially without benefit of the proxy rules, it would be hopeless to achieve the action sought herein from the shareholders as a body.

"Wherefore, plaintiffs pray that defendant be required to account for all sums and the value of all benefits received by him, and that he repay to the nominal defendant the value of all benefits so received in excess of a reasonable salary as President of the nominal defendant, and that plaintiffs have their costs, including a reasonable attorney's fee, assessed proportionately against the interests of those benefited by this action, and for such other relief as to the court may seem meet and proper in the premises."

The motion to dismiss which the court sustained alleges that plaintiffs have failed to state a cause of action for the reason that plaintiffs failed to allege in Count II of their second amended petition as amended by them that they have sought relief from other shareholders of the nominal defendant, Anheuser-Busch, Inc., or to state facts showing why plaintiffs failed to seek such relief. In effect, the court's ruling found that plaintiffs failed to disclose a legal right to maintain the instant action. As pointed out, this is a class action instituted by plaintiffs pursuant to the provisions of Civil Rule 52.04(a). Under said rule all persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants, however, subject to the provisions of Civil Rule 52.08. Under Civil Rule 52.08, subd. (b) it is provided:

"Secondary Action by Shareholders. —In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the petition shall aver that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law. *The petition shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees, and, if necessary, from the shareholders, such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort.*" (Emphasis ours.)

We now review what we consider to be the fundamental principles of law involved. The management and control of the property and business of a corporation is vested by § 351.310 RSMo 1959, 17 V.A. M.S., in the Board of Directors, and this has been a fundamental principle of our statutory corporate law for many years. Santa Fe Hills Golf and Country Club v. Safehi Realty Co., Mo., 349 S.W.2d 27;

Leggett v. Missouri State Life Insurance Co., Mo., 342 S.W.2d 833; Merrill v. Davis, 359 Mo. 1191, 225 S.W.2d 763; Helm v. Talmadge, Mo.App., 40 S.W.2d 496. While directors are not regarded as trustees in a strictly technical sense, they are considered in equity as bearing a fiduciary relation to the corporation and its stockholders. Merrill v. Davis, supra, 225 S.W.2d l.c. 767, and authorities cited therein. Essentially, a corporation should be run for the benefit of its stockholders and not for that of its directors and officers, but no individual stockholder has the authority to take over the duties of corporate management. The management and control of the corporation being vested by statute in the board of directors, as we have pointed out, is not in the stockholders and the action of the board of directors in regard to the affairs of the corporation is controlling and exclusive and the stockholders cannot control the directors in the exercise of the judgment vested in them by the statute. The function of the board of directors is to exercise judgment and discretion which the court cannot do in their stead, Merrill v. Davis, supra. Where the act complained of consists in an exercise of the discretion reposed in the directors or stockholders acting as such through the power of the majority, a stockholder cannot sue, for such an exercise of discretion cannot constitute an actionable wrong to the corporation even if injurious to it, and this rule includes discretion to sue or not to sue. 13 Fletcher's Cyc., Corporations, § 5951, p. 439; Hawes v. City of Oakland, 104 U.S. 450, 26 L.Ed. 827.

 If any or all of the directors perform improperly, the corporation itself is the proper party plaintiff to bring an action to recover any losses occasioned by the wrong. Helm v. Talmadge, supra. The control of the litigation and the decision to litigate is in the directors and, until they improperly fail or refuse to sue or defend in the corporate name, the stockholders cannot do so. In the event of the failure or refusal of the directors to litigate, then the stockholders may sue, however, it must be in right of the corporation, in which their petition and proof must make a case of wrongful refusal on the part of the directors to sue. Merrill v. Davis, supra.

As we have said, the primary authority to sue for corporate injuries is in the board of directors and managing officers. This is so because "[i]n the eyes of the law the injury is to the corporation (i. e. to the stockholders collectively) and not to the stockholders individually." Schick v. Riemer, Mo.App., 263 S.W.2d 51; Caldwell v. Eubanks, 326 Mo. 185, 30 S.W.2d 976, 72 A.L.R. 621; Punch v. Hipolite Co., 340 Mo. 53, 100 S.W.2d 878.

 If it is necessary for a stockholder to bring a derivative action because the corporate management wrongfully refuses to do so, it is conducted by the stockholder as the representative of the corporation and in such action the corporation is the real party in interest and it is brought for the benefit of the corporation. Putnam v. Juvenile Shoe Corporation, 307 Mo. 74, 269 S.W. 593, 40 A.L.R. 1412. If a money judgment is awarded, it must be paid to the corporation.

 If a stockholder brings a derivative action in behalf of the corporation it is a settled principle of equity jurisprudence and, we add, a requirement of Civil Rule 52.08(b), that before a court will entertain such an action and inquire into wrongs complained of by the stockholder, the stockholder must show that he has no other avenue of recovery and this can be done only on a showing that he has exhausted all remedies and reasonable efforts within the corporation. This principle was stated by our Supreme Court in Punch v. Hipolite Co., supra, (100 S.W.2d l. c. 884) where it quoted from another opinion as follows:

" 'The stockholders would not be authorized to prosecute such action until they first exhausted all remedies within the corporation, unless the facts were such that it would be futile for them

to make any effort to obtain relief through corporate channels.' Caldwell v. Eubanks, 326 Mo. 185, 30 S.W.(2d) 976, 979, 72 A.L.R. 621; Vogeler v. Punch, 205 Mo. 558, 103 S.W. 1001; Kirrane v. Boone, 334 Mo. 558, 66 S.W. (2d) 861. In order, therefore, to maintain the action, the individual stockholder must allege, and the proof show, either, that he has made demand upon the board of directors to take remedial action on behalf of the corporation and *that effort failing that he unsuccessfully sought action by the stockholders as a body, or a state of facts from which it appears that such demand or effort within the corporation and through corporate channels would have been futile and unavailing.* Caldwell v. Eubanks, supra, and cases there cited." (Emphasis ours.)

A landmark case frequently cited in our Missouri decisions concerning stockholders' derivative actions is that of Hawes v. City of Oakland, supra, wherein the court said at 104 U.S. 1. c. 460–461:

"But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.

"The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity, * * *."

This is the predominant rule followed in all of our Missouri cases and in addition to the cases cited in the quotation taken from Punch v. Hipolite Co., supra, we also cite Ratermann Building & Contracting Co. v. Missouri Portland Cement Co., 347 Mo. 12, 145 S.W.2d 422; Bailey v. State Farmers Mutual Casualty Co., Mo.App., 377 S.W.2d 485, and Helm v. Talmadge, supra. For other cases within the Federal jurisdiction, wherein the rule was applied requiring stockholders in derivative actions to exhaust all reasonable efforts to remedy the grievance within the corporation before bringing the action, see Quirke v. St. Louis-San Francisco Railway Company, 8 Cir., 277 F.2d 705, and Heinz v. National Bank of Commerce in St. Louis, 8 Cir., 237 F. 942.

 While the rule stated above requires the stockholder who brings the derivative action to allege and show, if he failed with the directors, that he has made an honest effort to obtain action by the stockholders as a body and if this is not done, where it could not be done or that it was not reasonable to require it and would therefore be a futile act, the complaining stockholder need not make these allegations in his petition if his petition alleges that the officers and directors of the corporation violated the trust committed to them by perpetrating and doing ultra vires, illegal or fraudulent acts, because such acts cannot be ratified even by a majority of the stockholders. In such a situation equity will entertain an action for relief by a dissenting minority stockholder without first resorting or appealing to the stockholders as a body. Helm v. Talmadge, supra; Leggett v. Missouri State Life Insurance Co., supra; Put-

nam v. Juvenile Shoe Corporation, supra; Merrill v. Davis, supra; Slutzker v. Rieber, 132 N.J.Eq. 406, 28 A.2d 525; Hawes v. City of Oakland, supra; Gottesman v. General Motors Corp., 2 Cir., 268 F.2d 194. Nor are allegations showing that a stockholder has made a demand upon the stockholders as a body necessary if the petition alleges a situation where the majority of the stockholders participated in the acts complained of, or, where the defendants sued are the holders of a majority of the shares, or other facts showing such a demand would be useless or futile. D'Oench v. Gillioz, 346 Mo. 179, 139 S.W.2d 921; Punch v. Hipolite Company, supra; Schick v. Riemer, supra; In re Western Tool and Manufacturing Co. (Gurney v. Massena et al.) 6 Cir., 142 F.2d 404. In the situations just mentioned the minority stockholder would be without a remedy if the courts of equity did not entertain his action. Therefore, it is necessary that a minority stockholder in his petition allege facts which make it clear that he cannot obtain redress through regular corporate action and his failure to so allege is fatal if he does not show that he has called upon the corporation and the body of stockholders to redress the wrong he complains of in his petition and been refused or, as said, show facts which would excuse such efforts. This is a settled principle of equity jurisprudence that a minority stockholder must comply with, because courts of equity cannot open their doors to every disgruntled or dissatisfied stockholder who has a grievance against the management of the corporation for the reason that courts of equity cannot assume the management of corporations or substitute their judgment for that of the directors and managing officers. Courts will not review or attempt to control the discretionary powers of the management or board of directors of a corporation in matters concerning the internal affairs within the business area of the corporation if the powers are fairly and honestly exercised. Leggett v. Missouri State Life Insurance Co., supra; Merrill v. Davis, supra; Putnam v. Juvenile Shoe Corporation, supra;

Quirke v. St. Louis-San Francisco Railway Co., supra; Heinz v. National Bank of Commerce in St. Louis, supra.

We limit our consideration of the sufficiency of plaintiffs' petition to the question raised by the grounds stated in the motion to dismiss, namely, "that the plaintiffs failed to allege in Count II of said Second Amended Petition that plaintiffs have sought relief from the other shareholders * * * or to state facts showing why plaintiffs failed to seek such relief; * * *."

■ Applying the principles of law we have heretofore stated to the amended second amended petition of plaintiffs, it is to be seen that plaintiffs do not allege that they sought the action desired by them from stockholders, therefore, in order to maintain their action plaintiffs must state facts sufficient to excuse their failure to obtain such action or show sufficient reasons for not making such effort. Civil Rule 52.08(b). As we have said, this rule is the outgrowth of established equitable principles which have been cited heretofore and the rule must be construed in the light of its equitable origin.

■ The management of a corporation is in the directors and the establishment and fixing of remuneration and perquisites for officers and managerial duties normally and initially is in the board of directors and, as we have pointed out in this regard, such duties being in the business and management area, any decision by the board of directors in connection therewith is usually controlling and exclusive and the stockholders cannot control the exercise of the judgment vested in them, unless this judgment is exercised in an arbitrary and capricious manner or contrary to by-laws or majority stockholders' action.

■ The petition does not allege that the directors or officers performed or perpetrated ultra vires, illegal or fraudulent acts. If it was alleged that they had, it would be unnecessary for plaintiffs to re-

sort to the stockholders for their desired action, because, as we have pointed out, the majority of the stockholders could not ratify such acts. Also, plaintiffs' petition does not allege or show that a majority of the stockholders improperly participated in the setting of the remuneration and perquisites complained of or that they participated in any manner. The petition does not show that the defendant Busch controls or holds a majority of the shares of stock of the corporation; nor does the petition show any other facts which would lead to the conclusion that a demand for the desired action would be useless and futile. Plaintiffs' petition does not show that they endeavored to seek redress of their complaint at regular meetings of the nominal defendant. Failing to allege such acts or facts, it becomes incumbent upon the plaintiffs to seek redress of their complaint from the body of the stockholders. This they must do, we think, because they have failed to allege that the other stockholders have refused to call upon the directors and management to bring this action. It may be that a majority of the stockholders do not feel that the remuneration and perquisites received by defendant Busch are excessive. In that event, to permit plaintiffs to prosecute this action would be calling upon the court to exercise its judgment for that of the directors and stockholders on a purely managerial question. This, as we have pointed out, courts will refuse to do. This need to apply to the stockholders collectively is but a showing required under the equitable principle that the stockholder must exhaust all remedies and reasonable efforts within the corporation. It was out of this equitable principle that Civil Rule 52.08(b) was adopted, which rule, in turn, came to us from Federal Rule 23(b). This rule, as stated in Cohen v. Industrial Finance Corporation, D.C., 44 F. Supp. 491, owes its origin to equitable considerations and should be construed accordingly and any construction that would result in the emasculation of the equitable principle that stockholders must exhaust all remedies and reasonable efforts within the corporation should be avoided. There is nothing in the petition of the plaintiffs to show that an appeal to the stockholders in the matter complained of in plaintiffs' petition would be futile. There is no allegation or showing in the petition that defendant Busch or the directors control or hold the majority of the shares of stock of the nominal defendant. If defendant Busch or the board of directors do not, and we must assume that they do not in the absence of an allegation in plaintiffs' petition to the contrary, then it is within the power of the remaining stockholders to call upon the board of directors to bring the action desired by the plaintiffs or they have it in their power to replace the board of directors, inasmuch as they would be the holders of the majority of the shares of stock of the nominal defendant. This is in keeping with the decisions of the Supreme Court of the State of Missouri, some of which we have cited, Punch v. Hipolite, supra.

Plaintiffs contend that since the action desired by them was the restitution of unreasonable compensation given to defendant Busch and since the setting of his compensation was within the management area of the board of directors and was beyond the statutory power of the stockholders, that they considered it not necessary to explain their failure to apply to the stockholders for redress. We do not agree with this position taken by the plaintiffs. It is true that in the first instance the prerogative of fixing officers' and managers' compensation is usually with the board of directors. Fry v. National Rejectors, Mo., 306 S.W.2d 465. As we have heretofore said, where this prerogative is arbitrarily exercised, it becomes a fitting subject for action by the stockholders, subject to meeting the demands of Civil Rule 52.08(b).

Frequently in some corporations the stockholders determine the general policy of remuneration for officers and directors. The implementation of the policy formulated is usually left to the officers and directors and, therefore, it is not unusual for stockholders to participate and have a deep interest in the formulation of remuneration

policies. Frequently officers and other stockholders submit to fellow stockholders proposals concerning the remuneration policy of the corporation. This is on the theory that every stockholder has a relationship to the management of the corporation. This has been demonstrated in the cases.

In the case of Diamond v. Davis, Sup., 62 N.Y.S.2d 181, one of the grievances in the complaints involved the compensation of executives. As an illustration that the stockholders have a place in the consideration of compensation paid to officers the court said (l. c. 189): "If after full, free and frank disclosure the bonus plan is adopted or ratified by the majority stockholders, it is usually binding on the minority."

In our state in the case of Putnam v. Juvenile Shoe Corporation, supra, which was a suit in equity by a minority stockholder to compel directors to restore to the corporate treasury moneys paid out as bonuses or deferred salaries to officers and employees of the corporation, the court said at (269 S.W. l. c. 597):

> "Courts will not substitute their judgment for that of the stockholders as to what is good business policy, or as to what is beneficial to the corporation, absent evidence of fraud upon minority stockholders."

The court held that the action of the directors in connection with the bonuses and salaries "was voidable, at most, and could be ratified by the stockholders." (269 S.W. l. c. 599.) In the course of its opinion in the Putnam case the court cited authorities from other jurisdictions which held that the action of the directors in voting increased salaries and bonuses to their number could be ratified by the stockholders at a stockholders' meeting.

In the case of Schick v. Riemer, supra, decided by this court, plaintiffs as minority stockholders, inter alia, complained that the defendants voted excessive salaries and bonuses and committed other grievances. In the course of our opinion we said:

> "There are circumstances in which minority stockholders may institute and maintain a proceeding to compel restoration to the corporate treasury of corporate funds misapplied by the negligence or intentional wrongdoing of directors and officers of the corporation. Before filing such action, however, they must apply for relief to the directorate, *and to the stockholders, exhausting all remedies within the corporation.* See Section 507.070, subd. 2, RSMo 1949, V.A.M.S. (Civil Rule 52.08 (b))." (Emphasis and parenthesis ours.) (263 S.W.2d l. c. 54.)

In the case of Heinz v. National Bank of Commerce in St. Louis, supra, the sum sought to be recovered was in the nature of compensation paid to an official of the bank. The court said at 237 F. l. c. 948:

> "It is not shown that any attempt was made to bring the matter to the attention of the stockholders at this meeting, and no showing is made why this was not done. The record does not show that any attempt was made to bring about action by the stockholders in regard to the matter, or to call it to their attention."

This case clearly stands for the proposition that stockholders do have the right to question the compensation paid to corporation officers and the right to approve or disapprove said compensation and such right is not beyond the power of the stockholders.

The matter of compensation and other perquisites paid to officers and directors is within the control or power of confirmation of the body of stockholders and any complaint in connection therewith must be brought to the attention of such stockholders for their action before a suit is brought. The stockholder is entitled as such to a certain degree of control in

these matters because as a stockholder he contributes to the corporate enterprise.

Therefore, we agree with defendant Busch that one could scarcely imagine an issue which would be more properly subject to resolution within the walls of a corporation than the setting of an officer's compensation, especially where, as in the instant case, it is alleged that the board of directors is controlled by the defendant Busch. The authorities we have cited give support to our position that where the directors are charged to be under the influence of defendant Busch, the stockholders have the right to consider the matter and ratify, if they wish, any act of the directors, provided the act is not ultra vires, illegal or fraudulent. We rule that plaintiffs were under a duty to submit their grievance to the body of stockholders before bringing this action.

Plaintiffs in support of their contention cite the case of Gottesman v. General Motors Corporation, supra. However, a reading of that case indicates that the primary reason given for excusing the failure of plaintiffs to make demand on the stockholders was because the acts complained of by the plaintiffs had been found prior to the plaintiffs' suit to be illegal and ultra vires acts, namely, violations of the antitrust laws by DuPont. As we have pointed out, under such circumstances even the majority of the stockholders of General Motors Corporation could not ratify such acts. Therefore, this authority is not relevant to the contention made.

 Another contention made by the plaintiffs is that through the last amendment made by them they have stated the facts showing why they have failed to seek redress from the body of stockholders. They seem to contend that having stated some reasons why they failed to seek stockholders' relief, even though they are inadequate and not legally sufficient, that such reasons are a sufficient compliance with the rule and that they have stated "Why plaintiffs failed to seek stockholder relief." We

agree with defendant Busch that it was necessary for plaintiffs to state legally cognizable reasons for their failure to seek relief from the other stockholders. Reasons other than those which make application to the other stockholders unnecessary do not excuse failure to seek relief from them. Quirke v. St. Louis–San Francisco Railway Company, supra, 277 F.2d l.c. 707. The rule, as we pointed out, requires plaintiffs to state with particularity the facts showing why they have failed to seek redress from the body of stockholders. It is obvious that the facts stated must be of sufficient legal import and reason as to show conclusively that a request made would be refused and, therefore, would be futile and useless. Where the facts alleged do not show conclusively that an appeal to the stockholders would be refused then such facts alleged must be deemed insufficient under the rule.

We hold, as we will later explain, that the reasons given by plaintiffs for not seeking stockholders' relief constitute an insufficient compliance with Civil Rule 52.08 (b) and, therefore, plaintiffs' petition failed to state a cause of action or, in the language of the Civil Code, failed to state a claim upon which relief may be granted.

The reasons given by plaintiffs appear in paragraph 12 and the subdivisions thereof, (a) (b) i, ii, iii, iv, v, vi. We have discussed the reason set out in paragraph 12(a). The subsequent paragraphs contain alleged reasons why it is impossible for plaintiffs to secure the election by the shareholders of a different board of directors.

 The reason given in 12(b) i, concisely stated, is that the members of the board of directors and especially the individual defendant as owners, trustees and proxies have the right to vote very large blocks of stock. There is nothing in this allegation which would indicate that the defendant Busch or the board of directors own or control the majority of the shares of stock. It needs no elaboration or discussion to show that the holders of the majority of the shares control the election

and selection of directors and, therefore, there is nothing contained in this reason which shows that the majority shareholders do not control the election of a different board of directors. As we have said heretofore, unless the plaintiffs allege and show that defendant Busch and the board of directors control a majority of the shares of stock, it is incumbent upon plaintiffs to obtain from the shareholders the action they desire. Not to require the complaining stockholders to make demand on the holders of the majority of the shares would make corporations, both large and small, subject to constant harassment by holders of an infinitesimal amount of stock compared to the total shares outstanding. There is no validity to the argument contained in plaintiffs' reply brief, where they contend that even though a majority is for ratification that the minority may be heard in a court of equity. Again, we say, where the matter under consideration is one that calls for the business judgment of a board of directors or of the majority shareholders and if this judgment is exercised fairly and honestly courts will not interfere. The only time that a court of equity will interfere, as we have stated, is when the matter complained of is ultra vires, illegal, fraudulent and, therefore, cannot be ratified by a majority of the stockholders or where the business judgment is exercised unfairly and in a dishonest manner.

■ Paragraph 12(b) ii gives as the reason for plaintiffs' inability to secure the election of a different board of directors that the present board and defendant Busch have access to funds for the purpose of soliciting proxies in behalf of themselves, and plaintiffs further state that defendant Busch and the board thus effectively control the communications between the corporation and its very large number of and constantly changing list of shareholders. There is no allegation that defendant Busch or the board of directors have prevented the plaintiffs from securing proxies. There is no allegation that the proxies have been fraudulently or illegally obtained or solicited and no allegation that the stockholders who executed the proxies to the defendant Busch and the board of directors have not done so of their own free will and volition. Access to the list of stockholders, however large in number they may be, is readily available to the plaintiffs under the provisions of § 351.215 RSMo.1959, 17 V.A.M.S.

As shown in the editorial comment accompanying the aforesaid section of the statute, this section contains requirement for stock transfer books and also contains general provision for examination of books of company by any shareholder at all proper times under such regulations as may be prescribed by by-laws. Also, in this connection § 351.255 RSMo 1959, 17 V.A.M.S., requires a stockholders' list to be on file 10 days previous to the annual shareholders' meeting with the address of and the number of shares held by each shareholder, which list for a period of 10 days prior to the annual meeting shall be kept on file at the registered office of the corporation and shall be subject to inspection by any shareholder at any time during usual business hours.

The same course of conduct followed by defendant Busch and the board of directors in obtaining proxies, complained of by plaintiffs, is available to plaintiffs.

■ Paragraph 12(b) iii states that it is impossible for plaintiffs to secure the election of a different board of directors because the directors and defendant Busch have refused to register the stock of the corporation on any National Securities Exchange, although requested by individual stockholders to do so, and that they, therefore, are not subject to the proxy rules and other rules of the Securities Exchange Commission. The following paragraph, subdivision iv, is related to subdivision iii, in that plaintiffs contend that the board of directors and defendant Busch escape disclosure to the shareholders of the details of the perquisites and remuneration of the

directors including that of defendant Busch. In this regard the details as to the perquisites and remuneration of the directors and defendant Busch are available to the plaintiffs through the exercise of their rights under the provisions of § 351.215, supra. Further, the complaints contained in subparagraphs iii and iv about the refusal to register the stock of the corporation on any National Stock Exchange are immaterial, because plaintiffs do not allege that this matter was brought before a stockholders' meeting for action and further, as defendant Busch stated in his brief, plaintiffs merely allege how much easier it would have been to challenge the judgment of a different board of directors in some other mythical situation. We agree with defendant Busch that it was not for plaintiffs to make the decision that the stock of the nominal defendant had to be listed on any exchange. The fact is that it is not so listed and the fact that it would be easier for plaintiffs to obtain proxies and, therefore, a new board of directors, if it was so listed, is merely posing a hypothetical situation and is not limiting the complaint to the facts surrounding the present corporate structure. Also, whether the stock should be registered on any National Securities Exchange is a matter to be decided by the holders of the majority of shares either through direct action at a stockholders' meeting or through ratification by the stockholders of such action taken by the board of directors. There is no allegation in plaintiffs' petition that the holders of a majority of the shares want registration of the stock or that plaintiffs ever urged registration at a stockholders' meeting.

█ The same can be said about subdivision v of paragraph 12(b). It is pointed out by this court in passing that §§ 12, 13 and 14 of the Securities Act of 1934, 15 U.S.C. §§ 78l, 78m, 78n have been amended as of August 20, 1964. This amendment to the Securities Exchange Act may make the provisions of the act applicable to the shares of the nominal defendant. However, it is not our purpose or jurisdiction to make any firm statement on this matter.

Finally, in paragraph vi it is contended that the great cost makes the solicitations of proxies hopeless and that a personal proxy solicitation would be ineffective. This same contention was made in the case of Quirke v. St. Louis-San Francisco Railway Company, supra, namely, "that the stockholders were numerous and widely scattered and that it would be expensive, time-consuming, and impossible to reach them." (277 F.2d l. c. 707.) In that case the court held the allegations with reference to plaintiffs' failure to obtain relief within the corporation were quite inadequate and pointed to the case of Heinz v. National Bank of Commerce, supra, in support of its opinion.

The court in the case of Quirke v. St. Louis-San Francisco Railway Company, supra, also quoted from the case of Stone v. Holy Hill Fruit Products, 5 Cir., 56 F.2d 554, as follows:

" * * * It is not alleged that there is any wrong combination of a majority of the stockholders, but only that they live at a distance, are ignorant of the situation, and send their proxies to the president. The plain remedy for that would be to seek another stockholders' meeting, after informing the other stockholders of the situation and asking them to withdraw their proxies and to attend. * * * The minority have a right to have the majority exercise their judgment, and to exercise it honestly and not fraudulently, but have no right to have a court substitute their own ideas and wishes for those of the majority, and that in advance of any refusal of the majority to hear and decide on the matter at issue." (277 F.2d l. c. 707, 708.)

In the Quirke case the court in its opinion made this additional comment and quoted from another case:

"What is said in Haffer v. Voit, [219 F.2d 704] supra, points out the

inadequacy of the excuse offered by the plaintiff for not seeking redress through the stockholders. In the course of that opinion it is said [219 F.2d 705]:

"'* * * plaintiffs made no earnest and honest effort to secure from the stockholders such action as they desired. Cf. Rule 23(b) Rules of Civil Procedure, 28 U.S.C.A.; Long v. Stites, 6 Cir., 88 F.2d 554; * * * plaintiffs' explanation. that they made no effort to secure such action from the stockholders upon the ground, among others, that they were widely scattered and that there would be expense and delay incident to such demand, is legally insufficient.'" (277 F.2d 1. c. 707).

■ The size of the corporation and the delay and expense in circularizing stockholders widely scattered does not excuse the failure to seek action from the stockholders. Fletcher's Cyc., Corporations, Vol. 13 § 5964, p. 463. Plaintiffs in their brief say that they would elaborate on the allegations in their petition by showing that the shareholders in the nominal defendant corporation were as many as 10,867, and that they could allege that 4,816,218 shares were the number of shares involved and that because of the number of shareholders and shares involved they should be excused from resorting to the majority stockholders. We are aware that in some cases the courts have held that where there are a large number of stockholders in widely different locations that it was not necessary for the complaining stockholders to make a demand on the shareholders even though they did hold a majority of the shares of stock. However, there are many more decisions that hold to the contrary and we think are better reasoned and require the complaining stockholders to make a demand on the holders of the majority shares of stock where there is no showing that to make such demand would be futile and useless. The court's action in sustaining the motion

of defendant Busch to dismiss Count II of the petition was correct.

The final point relied on by plaintiffs that calls for consideration is the contention that the trial court erred in denying plaintiffs' leave, under Civil Rule 67.05, V.A. M.R., to amend their petition upon the sustaining of the motion to dismiss, because as plaintiffs say, they had a right to so amend under the rule or because under the circumstances it was an abuse of discretion to deny such leave. It will be recalled that we pointed out that the court dismissed Count II of plaintiffs' second amended petition as amended and did so "with prejudice," and that following its ruling plaintiffs filed a motion for leave to amend Count II of their second amended petition as amended by them and for a determination of the time within which such amendment shall be made and the court overruled this motion.

Civil Rule 67.05 reads as follows:

"On sustaining a motion to dismiss a claim, counterclaim or cross-claim the court shall freely grant leave to amend and shall specify the time within which the amendment shall be made or amended pleading filed. If the amended pleading is not filed within the time allowed, final judgment of dismissal with prejudice shall be entered on motion except in cases of excusable neglect; in which cases amendment shall be made promptly by the party in default."

■ Plaintiffs contend that the use of the word "shall" in the rule makes it mandatory upon the court to grant leave to amend, pointing out that the word "shall" in statutory construction is mandatory. 80 C.J.S., Shall, p. 136. Plaintiffs also contend that this rule must be read in conjunction with Civil Rule 55.53 because it is in general accord with the admonition of that rule that "leave [to amend] shall be freely given when justice so requires." In their brief plaintiffs say: "We see in the new

rule no room for judicial discretion. If the words mean what the words mean, the court *must* grant leave until the plaintiff is satisfied that he can amend no further to any use, or until the amendment be stricken as immaterial under Rule 55.35. Otherwise, the rule does not authorize a judgment of dismissal 'with prejudice,' such as was entered here, unless an amended petition not be filed within the time allowed." In making this contention that leave to amend is mandatory upon the court under Civil Rule 67.05 the plaintiffs have overlooked the word "freely." The use of the word "freely" clearly shows that the trial judge has discretion to grant leave to amend or to refuse it. In the case of Jones v. Williams, 357 Mo. 531, 209 S.W. 2d 907, l. c. 911, the Supreme Court in construing the language contained in what is now Civil Rule 55.53 said that the language "leave shall be freely given when justice so requires" merely directs the trial court to be liberal in granting leave to file amended pleadings. As pointed out by defendant Busch in his brief, the trial court must be liberal in its action, but the very concept of liberality connotes discretion. It is a legal discretion that must be exercised and one which is controlled and disciplined according to legal standards and reasoning. Pehle v. Beedle, Mo.App., 392 S.W.2d 652, l. c. 657. If we were to accord to Civil Rule 67.05 the mandatory construction called for by plaintiffs, the plaintiffs could prevent the trial court from ever finally dismissing an insufficient petition, simply by repeatedly demanding the right to amend and filing some sort of amended petition within the time prescribed by the court. It is readily seen that such a construction could lead to the filing of countless amended petitions, as defendant Busch has pointed out, simply by plaintiffs repeatedly demanding the right to amend after the last petition is found to be insufficient. The sole inquiry we are forced to make is to determine whether or not the trial court abused the discretion lodged in it by the rule.

An examination of the record reveals that plaintiffs' original petition was filed on May 7, 1963. On May 17, 1963, plaintiffs filed their first amended petition. On June 14, 1963, plaintiffs amended their first amended petition. Thereafter, on August 9, 1963, by leave of court, plaintiffs filed their second amended petition. On December 18, 1963, plaintiffs by leave of court amended Count II of their second amended petition by substituting three new pages. This amendment consisted primarily of the addition of paragraph 12 with the subdivisions (a) (b) and i, ii, iii, iv, v, vi. After the court sustained the motion of defendant Busch to dismiss Count II of plaintiffs' second amended petition as amended, plaintiffs again, as we pointed out, asked leave to further amend their petition and asked the court to determine the time within which such amendment should be made. This last motion was the fifth attempt by plaintiffs to meet the inadequacies of their petition.

The trial court when ruling on the motion to dismiss was aware of the many amendments made by plaintiffs to their petition and, no doubt, felt, as we do, that if plaintiffs could amend the petition to supply the principal inadequacy, namely, that the defendant Busch and the board of directors owned or controlled the majority of the shares of the stock of the nominal defendant they would have done so. Such an allegation if made would show that it would be futile and useless for plaintiffs to seek from the other stockholders the relief plaintiffs desired. Plaintiffs were represented by capable and competent counsel, who, no doubt, knew that an allegation that defendant Busch and the board of directors owned and controlled the majority of the shares would have effectively excused plaintiffs' failure to seek relief from the other stockholders. No doubt, the trial court felt that the plaintiffs could not further amend their petition to meet the inadequacy we have outlined. Plaintiffs' inability to make this allegation can also be inferred from their briefs, wherein they allege that if permitted to

amend they could have supplanted the allegation of "very large number of * * * shareholders" with the allegation that there were as many as 10,867 shareholders holding 4,816,218 shares of stock. Such an amendment would add nothing to plaintiffs' petition, inasmuch as said plaintiffs would continue to fail to meet the inadequacy and defect we have outlined. We cannot say that the trial court abused its discretion in dismissing plaintiffs' second amended petition as amended by them with prejudice.

The judgment of the trial court should be affirmed. It is so ordered.

WOLFE, P. J., concurs.

WILLIAM E. BUDER, Special Judge, not participating.