George T. O'MALEY, Jr., Plaintiff-
Appellant,

v.

ISC INDUSTRIES, INC., et al., Defendants-
Respondents.

No. KCD 26174.

Missouri Court of Appeals,
Kansas City District.

Feb. 3, 1975.

John R. Cleary, Kansas City, for plaintiff-appellant.

Martin J. Purcell, John R. Bancroft, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, for defendant-respondent ISC.

Paul Scott Kelly, Jr., Myron S. Silverman, Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Kansas City, for defendants-respondent Hamilton, Gaughan, Gee and Troutz.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

DIXON, Judge.

Plaintiff appeals from a trial court order dismissing with prejudice plaintiff's first amended petition in a derivative action. The stated grounds for the trial court's action were that plaintiff failed to state a claim upon which relief could be granted because plaintiff failed to allege facts showing that his intra-corporate remedy had been exhausted and that he failed to allege facts supporting the conclusion that plaintiff was fairly chosen by the class and adequately represented it. Plaintiff's first amended petition was in seven counts.

Count I of the petition charges that the named defendants knew of a fraudulent scheme by ISC Industries, Inc. that involved the illegal acquisition of copies of a test given by the National Association of Securities Dealers and the distribution of such test to the employees of ISC Industries prior to the time they were to take the test. Count II prayed for an accounting for and judgment against defendants for the value of services rendered by ISC employees on non-corporate tasks. Count III of the petition charged that defendants, Hamilton, Gaughan and Gee, made illegal political contributions from corporate funds. Count IV prayed for an accounting of and judgment against defendants for the value of corporate hotel and travel credits used for personal purposes by defendants. Count V prayed for $250,000 damage against Hamilton, Gee and Gaughan because they were responsible for publication of an allegedly erroneous audit report concerning earnings for the 1970 fiscal year. Count VI prayed for an accounting of and judgment against defendants for the value of services allegedly rendered by ISC employees on non-corporate tasks. Count VII prayed for an accounting of losses incurred in dealings between ISC Industries, Inc., and a corporation owned by defendant Troutz.

To this petition, the individual defendants and the corporation filed separate motions to dismiss asserting affirmatively that plaintiff's petition fails to allege that he had exhausted his intra-corporate remedies.

Unlike the usual record on a motion to dismiss, this record presents a fairly complete factual background—this because the moving parties attached to the motions to dismiss affidavits and recitals of fact not disputed by the plaintiff. Drawing upon the pleadings and these factual resources, it appears that the plaintiff was an employee of the ISC Industries, Inc., as well as a stockholder, owning 450 shares of the 1,648,101 outstanding shares. Following his discharge on July 29, 1971, the plaintiff, on August 17, 1971, addressed to the Directors of the corporation a letter specifying eight acts of alleged wrongdoing and requested the Directors to take legal action against "these executive officers" by September 1, 1971. The executive officers were not identified by name in this letter. The request for legal action contained a deadline of September 1, 1971, On August 31, 1971, the Board of Directors, over the signature of the Secretary of the corporation, responded specifically to each of the allegations in the plaintiff's letter and requested names of the executives alleged to have been acting improperly and requested further information as to some of the plaintiff's charges, while asserting generally that, to the extent of their knowledge of the specific matters, they were not wrong-

ful nor harmful or damaging to the corporation. The letter closed with a statement that the Board of Directors stood ready to discharge its duties to the stockholders and would consider further the matters referred to in the plaintiff's letter following receipt of the information requested. The plaintiff did not respond to this letter except by the filing of his suit on September 7, 1971. It further appears from the allegations of the petition the allegedly miscreant directors also constituted a majority of the executive committee of the Board of Directors. The four individual defendants did not constitute a majority of the Board of Directors, however, there being seven "outside directors."

Thus, the first and dispositive issue raised by this appeal is whether the plaintiff has pleaded an exhaustion of his intra-corporate remedies under Rule 52.08(b) (now Rule 52.09), V.A.M.R. The rule as it read at the time of the trial court's ruling was as follows:

"(b) *Secondary Action by Shareholders.* In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the petition shall aver that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law. The petition shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees, and, if necessary, from the shareholders, such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

■ A derivative action such as the plaintiff seeks to assert is historically an equitable action. Albers v. Merchants Exchange of St. Louis, 45 Mo.App. 206, 219 (1891). As an equitable action, the courts formulated certain requirements respecting

the necessary predicate for such an action. Among these prerequisites was the pleading and proof of the plaintiff stockholders' efforts to obtain redress within the corporate structure for the wrongs complained of by him. Hawes v. Oakland, 104 U.S. 450, 461, 26 L.Ed. 827 (1881). Kirrane v. Boone, 66 S.W.2d 861, 864 (Mo.1933). The basis for such a requirement of pleading and proof is explicated in Saigh v. Busch, 396 S.W.2d 9, 15, 16 (Mo.App. 1965). *Saigh* also holds that Rule 52.08(b) (now Rule 52.09) is but declarative of the common law. Thus, the requirement of the common law that a plaintiff stockholder must plead and prove the efforts of the plaintiff to obtain relief within the corporate structure as now codified in the rules is the settled law of Missouri. Saigh, 1. c. 17. But the doctrine now familiarly known as the "exhaustion of intra-corporate remedies" is not without saving exception for plaintiff stockholders who have made an earnest and real effort to obtain redress and have either been refused relief or thwarted in their efforts by a recalcitrant or unwilling Board of Directors or majority of stockholders.

■ The rule also requires, in compliance with what is commonly understood as to the management of corporations, that such efforts should be first addressed to the directors, and if that be unavailing, to the stockholders.

This appeal then requires a determination, first, has the plaintiff pleaded facts showing a refusal of action by the Board of Directors, and, second, if not, are facts pleaded that bring the plaintiff within any exception to the rule set forth?

■ Plaintiff tacitly concedes both in pleading and brief that the Board of Directors had not refused to act. Some contention is made that the language of the August 31 response by the Board of Directors to the effect that the complaints of the plaintiff were unsupported in fact and were immaterial and indefinite indicated a refusal in "effect," therefore relieving the

plaintiff of any burden to request further action or supply additional factual material. The plain defect in this argument is the letter, read as a whole, cannot be viewed as a refusal to act; in fact, as noted above, it asserted the intention of the Board to discharge its duties upon receipt of additional information. It must be noted that the Board's request for the *names* of the alleged wrongdoers was certainly a reasonable enough request in view of the seriousness of the charges laid by plaintiff in his letter and subsequent petition. Nor could plaintiff assert he had no knowledge, for he did, in fact, specifically name the alleged wrongdoers in the amended pleading here in question.

■■ The real thrust of the plaintiff's argument of compliance with Rule 52.08(b) (now 52.09) as to Board action is by arguing that the language of his petition, "further correspondence in view of the position of the defendants constituting a majority of the executive committee and the chief executive officers of ISC would be fruitless, and therefore this action is filed," brings him within the exception to the rule, under 52.08(b) established by the case law, that when a majority of the Board of Directors constitute the wrongdoers, the plaintiff need not request action of the Board before bringing his suit.

The case law of Missouri establishes that a plaintiff stockholder need not make demand for relief to the Board of Directors when the alleged wrongdoers constitute a majority of the Board. Caldwell v. Eubanks, 326 Mo. 185, 30 S.W.2d 976 (1930); Punch v. Hipolite Company, 340 Mo. 53, 100 S.W.2d 878 (1936).

The reason for the exception is plain in reason and as stated in the cases, it is that a useless and unavailing act will not be required.

The plaintiff's assertion that further efforts with the Board would have been "fruitless" does not bring him within the exception as it is but a conclusionary pleading, not factual one on this record. Caldwell v. Eubanks, supra. Bailey v. State Farmers Mutual Casualty Company, 377 S.W.2d 485, 488 (Mo.App.1964).

The final argument of plaintiff rests upon an attempt to bring himself squarely within the exception stated above.

Plaintiff reasons, from the language of the petition that the allegedly malfeasant directors are a majority of the executive committee of the Board, to the proposition boldly stated in his brief that they "control and run" the corporation. The facts in this record are to the contrary. The defendants do own more stock than plaintiff, but, even in the aggregate, it is shown by the record to be only slightly more than four percent of the total stock. They do not constitute the controlling majority of the Board, there being seven other directors who are not officers nor charged with any wrongdoing. The plaintiff's petition does not bring him within either the statement of the exception nor the reason for the exception and the action of the trial court must be upheld. The disposition of this issue affirmatively to the decision of the trial court makes it unnecessary to consider the other matters urged on appeal.

Judgment affirmed.

All concur.