Edward F. QUIRKE, Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, Daniel K. Catlin et al.,
Appellees (two cases).

Edward F. QUIRKE, Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY and David Roberts, Jr.,
Appellees.

Edward F. QUIRKE, Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY and E. L. Bruce, Jr.,
Appellees.

Edward F. QUIRKE, Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, Hugh L. Harrell and R.
Otis McClintock, Appellees.

Nos. 16310–16314.

United States Court of Appeals
Eighth Circuit.

May 4, 1960.

Aaron Kravitch, Savannah, Ga., for appellant.

Ralph L. McAfee, New York City, for appellee.

Before GARDNER, WOODROUGH and BLACKMUN, Circuit Judges.

GARDNER, Circuit Judge.

There are involved in this appeal five actions consolidated for the purpose of trial and likewise consolidated on appeal. Basically they all stem from the same transaction; to-wit, the purchase of stock in the Central of Georgia Railway Company by the St. Louis-San Francisco Railway Company, and represent two causes of action. The first is a stockholder's derivative action brought by appellant on behalf of the St. Louis-San Francisco Railway Company, hereinafter referred to as the Frisco, against its directors and certain of its officers. The second is a bondholder's action, the bondholders reportedly represented by appellant, against the same directors and officers. Hereinafter we shall refer to appellant as plaintiff and appellee as defendant or the Frisco.

Defendant moved to dismiss both actions. Its motion to dismiss the stockholder's action is based upon the grounds that: (1) plaintiff's interests are adverse to those of Frisco and its other stockholders and that, therefore, he does not represent them; (2) the court lacks jurisdiction over the subject matter because the issues are within the exclusive primary jurisdiction of the Interstate Commerce Commission, and the proceedings before the Commission have not been concluded; and (3) the complaint fails to show plaintiff's efforts to secure shareholder action as required by Rule 23(b) of the Federal Rules of Civil Procedure, 28 U.S.C.

Its motion to dismiss the bondholder's action is based upon the grounds that: (1) the complaint fails to state a claim for fraud because the allegedly fraudulent representations were not made to plaintiff and plaintiff acquired his bonds before those representations were made;

(2) the notice, demand and offer of indemnity requirements of the mortgage indentures, which are a condition precedent to the bringing of this action, have not been satisfied; (3) this is not a proper class suit because plaintiff does not adequately represent the interests of the class; (4) the requisite jurisdictional amount has not been established; and (5) the Interstate Commerce Commission has exclusive primary jurisdiction and plaintiff's administrative remedy has not been exhausted.

The court sustained both motions and this appeal followed. In seeking reversal plaintiff contends that the court erred in dismissing the stockholder's suit for failure to allege that plaintiff had sought relief from Frisco's stockholders. Likewise plaintiff contends that the court erred in dismissing the bondholder's suit for failure to allege compliance with the conditions precedent to suit imposed by the indentures which govern plaintiff's rights under his bonds, and that the court erred as to both causes of action in holding that plaintiff could not maintain these actions because he brought both actions in furtherance of interests adverse to those of Frisco and its stockholders and bondholders and therefore lacks standing to sue on their behalf and does not come into court with clean hands.

Plaintiff at all times here pertinent was the owner of 100 shares preferred and 200 shares common stock of the Frisco. In his complaint he charges that as a part of the plan of reorganization of Frisco certain bond issues were authorized to be issued and sold for certain specific purposes; that the officers and directors of Frisco, in disregard of the authorization for the issuance and sale of the bonds, devoted a large part of the proceeds of the bond sale to the purchase of Central of Georgia preferred and common stock. He asks that Frisco be restrained from disposing of the Central of Georgia stock and requests that it be sequestered, seized and impounded by the court and that a trustee be appointed to take possession of that stock. He also seeks compensatory, punitive, and exem-

plary damages, plus expenses of the litigation, including counsel fees.

■ The complaint contains no allegations that prior to the institution of his stockholder's suit he had exhausted his remedies within the corporation by seeking remedy from either the directors or stockholders. By amendment he charges that such action on his part would have been futile because the directors were hostile and had themselves committed the alleged wrong from which he sought relief, and that the stockholders were numerous and widely scattered and that it would be expensive, time-consuming, and impossible to reach them.

Section 23(b) Federal Rules of Civil Procedure, Title 28, United States Code, provides in effect that as a condition precedent to the bringing of a stockholder's derivative action his complaint must allege " * * * the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders, such action as he desires, and the reasons for his failure to obtain such relief or the reasons for not making such efforts." We think the allegations with reference to his failure to obtain relief within the corporation quite inadequate. Heinz v. National Bank of Commerce, 8 Cir., 237 F. 942; Stone v. Holly Hill Fruit Products, 5 Cir., 56 F.2d 553; Haffer v. Voit, 6 Cir., 219 F.2d 704. In Heinz v. National Bank of Commerce, supra, in referring to the failure of the plaintiff to exhaust his remedy within the corporation, we said [237 F. 949]:

> "The matter would be one preeminently for the consideration of the stockholders as a body, and the objection of the plaintiff to the pension fund plan should first have been brought to the attention of that body for redress of any wrong that he claims to have suffered. This is not an emergency suit, and no irreparable injury is threatened. Indeed, the wrong, if any, was committed long prior to the commencement of the suit. * * * It is not shown that any attempt was made to bring the matter to the attention of the stockholders at this meeting, and no showing is made why this was not done. The record does not show that any attempt was made to bring about action by the stockholders in regard to the matter, or to call it to their attention. * * * There is no showing that the directors hold or have ever held a controlling, or even a large, interest in the stock of the bank. * * * There is no showing that any of the stockholders were antagonistic to the bringing of such suit, or that the interests of the other stockholders were in any way antagonistic to the interest of the plaintiff."

What is said in Haffer v. Voit, supra, points out the inadequacy of the excuse offered by the plaintiff for not seeking redress through the stockholders. In the course of that opinion it is said [219 F.2d 705]:

> " * * * plaintiffs made no earnest and honest effort to secure from the stockholders such action as they desired, Cf. Rule 23(b) Rules of Civil Procedure, 28 U.S.C.A.; Long v. Stites, 6 Cir., 88 F.2d 554; * * * plaintiffs' explanation that they made no effort to secure such action from the stockholders upon the ground, among others, that they were widely scattered and that there would be expense and delay incident to such demand, is legally insufficient."

What is said in Stone v. Holly Hill Fruit Products, supra, is here peculiarly apposite. It is there said, inter alia [56 F.2d 554]:

> "If it had been distinctly alleged that all four of the directors who are joined as defendants were so involved as to make application to them obviously futile, there should have been an effort made through the stockholders to control or supplant them. It is not alleged that there is any wrong combination of a majority of the stockholders, but only that they live at a distance, are

ignorant of the situation, and send their proxies to the president. The plain remedy for that would be to seek another stockholders' meeting, after informing the other stockholders of the situation and asking them to withdraw their proxies and to attend. A stockholder, in taking stock in the ordinary corporation, submits, within the charter limits, to a guidance of the corporate affairs according to the will of the owners of a majority of the stock and through the directors whom the majority choose. The minority have a right to have the majority exercise their judgment, and to exercise it honestly and not fraudulently, but have no right to have a court substitute their own ideas and wishes for those of the majority, and that in advance of any refusal of the majority to hear and decide on the matter at issue."

It is worthy of note that although this derivative action purports to have been brought on behalf of plaintiff and other stockholders, no other stockholders have joined in its prosecution. Rule 23(a) Federal Rules of Civil Procedure, Title 28, United States Code, authorizing class actions, provides that such an action may be maintained by one of the class "as will fairly insure the adequate representation of all." It is urged that plaintiff in fact has interests adverse to those of the other stockholders of Frisco. Plaintiff is the owner of stock in the Central of Georgia and he admits that another stockholder of Central of Georgia is sharing with him the expenses of both his actions. His adverse interest is further disclosed by his deposition offered in support of defendant's motion to dismiss both actions, wherein he among other things testified as follows:

"Q. Let me ask you this. At the hearing you opposed the Frisco application. A. Right.

"Q. Because you wanted Central to remain independent. A. Right. * * * I will put it this way, that the upper management of the Cen-tral of Georgia, including the Executive Committee and the Chairman, did arrange to further the interests of the Frisco in acquiring the Central of Georgia. * * * Which, in my opinion was inimical to my investment in the Central of Georgia, and the interests of the people I represented. And therefore, taking the Central of Georgia as a whole, its interests would not be advanced by control or merger with the Frisco, which was the ultimate object of the Frisco's acquisition of Central's stock."

Manifestly, it was the opinion of the plaintiff that the purchase of Central of Georgia stock by the Frisco was advantageous to the Frisco and its stockholders but the sale of Central of Georgia stock by that company was detrimental to the company and its stockholders of whom he was one. He had such adverse interests as made him an unfit person to maintain this class action. We conclude that the court committed no error in dismissing plaintiff's stockholder's derivative action.

In his bondholder's suit, plaintiff alleges that he is the owner of certain bonds of the Frisco in the aggregate amount of $17,000.00, and he purports to bring his action on behalf of all bondholders. No other bondholders, however, have joined in the action. His contention is that he and his fellow bondholders were injured by the action of Frisco's directors in using the proceeds of the sale of the bonds to purchase stock of the Central of Georgia Railway Company. In his prayer for relief plaintiff seeks an injunction restraining Frisco from exercising any acts of ownership or control over the Central stock; that the Central stock be seized, impounded, sequestered and turned over to a trustee to be designated by the court; that such trustee be directed to hold the stock for the benefit of all of the bondholders whom plaintiff purports to represent; that he be awarded compensatory damages for a loss caused by diminution in the market value of his securities by reason of the alleged

unlawful acts of Frisco and the individual defendants. He also seeks punitive damages, counsel fees and expenses.

██ Plaintiff as a bondholder is a contract creditor of Frisco and hence is bound by the provisions of the mortgage indenture under which the bonds were issued. This mortgage indenture secured the bonds of plaintiff and other bondholders similarly situated. This indenture contains certain express requirements of notification, request, and offer of indemnity to the indenture trustees as a condition precedent to the bringing of suit by an individual bondholder. Section 21 of the indenture reads as follows:

"No holder of any Bond or appurtenant coupon shall have any right to institute any suit, action or proceeding in equity or at law for the foreclosure of this Indenture, or for the execution of any trust hereunder, including the appointment of a Receiver, or for any other remedy hereunder, unless such holder previously shall have delivered to the Trustees written notice that some one or more specified Events of Default has happened and is continuing, nor unless also the holders of twenty-five per cent (25%) in principal amount of the Bonds then outstanding shall have requested the Trustees in writing, and shall have afforded to them reasonable opportunity, either to proceed to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding in their own names, nor unless one or more holders of Bonds shall have offered to the Trustees adequate security and indemnity, satisfactory to them, against the costs, expenses and liabilities to be incurred therein or thereby, nor unless the Trustees shall have refused or neglected to act on such notification, request or offer of indemnity are hereby declared, in every such case, at the option of the Trustees, to be conditions precedent to the execution of the powers and trusts of this Indenture and to any action

or clause of action for foreclosure, including the appointment of a Receiver, or for any other remedy hereunder, it being understood and intended that no holder or holders of Bonds and coupons shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the lien of this Indenture or to enforce any right hereunder, except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had or maintained in the manner herein provided, and for the equal benefit of all holders of the outstanding Bonds or coupons."

These conditions have not been met by plaintiff and we have held compliance with them a condition precedent to the right of an individual bondholder to maintain an action. These restrictions place positive limitations on the rights of every bondholder which cannot at his option be ignored. They are both reasonable and salutary. Central States Life Ins. Co. v. Koplar Co., 8 Cir., 80 F.2d 754; Allan v. Moline Plow Co., 8 Cir., 14 F.2d 912; Home Mortgage Co. v. Ramsey, 4 Cir., 49 F.2d 738; Muren v. Southern Coal & Mining Co., 177 Mo. App. 600, 160 S.W. 835. The reasons for the rule are stated by us in Central States Life Ins. Co. v. Koplar Co., supra, as follows [80 F.2d 758]:

"The reason for the rule is not far to seek. If in a mortgage securing thousands of bonds every holder of a bond or bonds were free to sue at will for himself and for others similarly situated, the resulting harassment and litigation would be not only burdensome but intolerable."

Plaintiff seeks to sustain his right to maintain the action on the ground that he is not seeking to sue under the indenture but merely "to protect himself against loss or damage." In answer to a similar contention made in Allan v. Moline Plow Co., supra, this court said [14 F.2d 917]:

" * * * the provisions of the trust agreement prohibited plaintiff

from maintaining this suit until demand had been made upon the trustee by at least 25 per cent. in amount of the note holders to prosecute the suit and the trustee had refused so to do. It follows that the very contract upon which plaintiff's cause of action is predicated provides that he shall not maintain this suit until the performance of a condition precedent which has not yet been performed."

The same thought is expressed by the Fourth U. S. Court of Appeals in Home Mortgage Co. v. Ramsey, supra, wherein it is said [49 F.2d 743]:

"Moreover, we think that the plaintiff is precluded from maintaining this suit by the terms of her bonds and the indenture securing them which provide in substance that action can be taken for the protection of the interest of the bondholders only where a certain number of the bondholders join. These provisions have already been quoted. The plaintiff argues that these provisions are void because it is an attempt to oust the jurisdiction of the courts. We do not so regard them. Under the terms of the bonds and indenture, the trustee is the representative of the plaintiff, and entitled to bring suit. The provisions are merely reasonable conditions precedent to the right of the plaintiff to bring the suit herself. They are intended for the security of all the bondholders, and no doubt rendered the bonds more salable. They were devised for just such a case as is presented here, where one bondholder, or a small minority, is determined upon action which a large majority believe hostile to their interests. The limitations imposed by the contract have not been met in this case."

We have considered all other contentions urged by plaintiff but think them without merit. The order appealed from is therefore affirmed.