# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2766

_____

| | | |
|---|---|---|
| Building Erection Services, Inc., | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| JLG, Inc., | * | |
| | * | Appeal from the United States |
| Defendant/Appellee, | * | District Court for the |
| | * | Western District of Missouri. |
| Terex Corporation, Inc.; Powerscreen | * | |
| International, PLC; Powerscreen | * | |
| Holdings USA, Inc.; Powerscreen | * | |
| USA, Inc., | * | |
| | * | |
| Third Party Defendants/ | * | |
| Appellees. | * | |

_____

Submitted: January 12, 2004
Filed: July 16, 2004

_____

Before BYE, LAY, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Building Erection Services, Inc. (BES) brought several claims against JLG Industries, Inc., (JLG) arising out of the failures of two cranes owned by BES and manufactured by JLG. Although the crane failures occurred in Missouri, the district

court concluded BES's causes of action "originated" in Kansas under Missouri's borrowing statute, Mo. Rev. Stat. § 516.190, and were barred by a two-year Kansas statute of limitations. BES contends its causes of action originated in Missouri, a five-year Missouri statute of limitations applies, and its claims are timely under Missouri law. We affirm in part, reverse in part, and remand for further proceedings.

I

BES is a Kansas corporation that erects structural steel and metal buildings, and employs cranes to do so. JLG is a Pennsylvania corporation that designs, manufactures, and sells boom truck cranes. In October 1991, BES purchased a new 1991 model JLG crane (the new crane). In February 1992, BES purchased a used 1990 model JLG crane (the used crane).

On December 18, 1995, the eyebolt on the used crane failed while operating at a job site in Kansas City, Missouri. The incident caused damage to the crane, the truck bed on which the crane was mounted, and the load of steel joists being moved by the crane at the time. Concerned about the cause of the failure, BES sent the failed eyebolt to Sherry Laboratories for an inspection by a metallurgical engineer. On January 8, 1996, Sherry sent a report to BES concluding the cause of the failure was a brittle fracture due to a crack likely present in the metal during the manufacturing process.

On September 30, 1999, the new crane malfunctioned at a job site in St. Joseph, Missouri. The crane was lifting two painters in a personnel basket when the boom suddenly retracted, causing the basket to drop on the roof of a home. The incident caused damage to the home and personal injuries to the two painters, both of whom have since sued BES.

BES filed suit against JLG on November 21, 2000, for damages arising from the December 1995 failure of the used crane and the September 1999 failure of the new crane. BES asserted claims for strict liability, negligence, and breach of warranty. BES sought to recover the economic damages caused by the crane failures, as well as indemnity or contribution for any liability BES may have to the homeowners or the painters as a result of the new crane's failure.

JLG filed a third-party complaint against Powerscreen USA, Inc., alleging Powerscreen was responsible for BES's claims pursuant to an Asset Purchase Agreement between JLG and Powerscreen. Powerscreen thereafter moved for summary judgment on all of BES's claims on statute-of-limitations grounds. Powerscreen relied upon Missouri's borrowing statute, Mo. Rev. Stat. § 516.190, which applies the laws of another state when a cause of action "originate[s]" in that state. Powerscreen argued BES's claims originated in Kansas and were therefore subject to Kansas's two-year statute of limitations, Kan. Stat. Ann. § 60-513.

BES opposed the summary judgment motion, arguing the causes of action originated in Missouri because the cranes failed in Missouri, and therefore the claims were timely under Missouri's five-year statute of limitations, Mo. Rev. Stat. § 516.120(4). In the alternative, BES argued the claims relating to the second crane failure were timely even under Kansas law, because those claims accrued on the day the new crane failed in September 1999 and the suit was filed within two years.

The district court agreed with Powerscreen's position on all points, and granted summary judgment in favor of both JLG and Powerscreen. The district court held all the claims originated in Kansas in January 1996, when and where BES received the metallurgical report describing the brittle fracture in the used crane's eyebolt. The district court applied Kansas's two-year statute of limitations, held the statute ran as of February 1998, and barred all claims arising from either crane failure. BES brought a timely appeal.

-3-

II

We review the district court's grant of summary judgment on statute-of-limitations grounds de novo. United States v. Godbout-Bandal, 232 F.3d 637, 639 (8th Cir. 2000).

Missouri's borrowing statute provides "[w]henever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." Mo. Rev. Stat. § 516.190. The term "originated" means "accrued." See, e.g., Nettles v. Am. Tel. & Tel. Co., 55 F.3d 1358, 1362 (8th Cir. 1995) (citing Thompson v. Crawford, 833 S.W.2d 868, 871 (Mo. 1992) (en banc)). Under Missouri law, a cause of action accrues when "the damage resulting therefrom is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. "Damages are sustained and capable of ascertainment when the fact of damage can be discovered or made known." Rajala v. Donnelly Meiners Jordan Kline, P.C., 193 F.3d 925, 928 (8th Cir. 1999) (internal quotations and citations omitted).

The district court held "the fact of damage was capable of ascertainment by BES when it received the Sherry Laboratories report at its offices in Olathe, Kansas and realized that the Eye Bolt anchor was defective." Add. at 12. Because that event occurred in Kansas, the district court held the claims originated in Kansas and the statute of limitations began running upon BES's receipt of the metallurgical report. We respectfully disagree.

A.    The Tort Claims

We first address when the tort claims accrued. BES knew it had been damaged by the used crane's failure on December 18, 1995, the day the used crane failed in Kansas City, Missouri. The failure caused obvious damage to the used crane itself,

the truck bed on which the crane was mounted, and the load of steel joists being moved by the crane. Thus, BES's damages were sustained and capable of ascertainment at that time. Likewise, BES knew it had been damaged by the new crane's failure on September 30, 1999, the day the crane's boom malfunctioned in St. Joseph, Missouri. On that day, BES knew the crane no longer worked, even if BES did not fully appreciate the cause or extent of the crane's problem, and knew the crane had damaged the roof of a home and caused personal injuries to two painters. Thus, BES's damages were sustained and "capable of ascertainment" as that phrase has been construed under Missouri law. See Nettles, 55 F.3d at 1362-63 ("Under the capable-of-ascertainment test . . . a cause of action accrues when the injury to plaintiff was complete as a legal injury. . .. The most that is required is that some damages have been sustained, so that the claimants know that they have a claim for some amount.") (internal citations and quotations omitted); Day v. DeVries & Assocs., P.C., 98 S.W.3d 92, 96 (Mo. Ct. App. 2003) ("Damage is sustained and capable of ascertainment when the damage can be discovered or made known, even if the extent of the damage remains unknown. The extent of potential damages need not even be knowable. All that is required for accrual is that some damage be sustained and capable of ascertainment.") (internal citations omitted).

BES's causes of action did not originate upon its receipt of the expert's report on January 8, 1996; that was merely the day BES knew the potential cause of its damages. If we were to hold BES's causes of action accrued upon receipt of the metallurgical report, we would be adopting the implicit premise that an injured party does not know it has been damaged until it receives an expert's report addressing the potential cause of damage. We refuse to do so because we see no logical connection between the receipt of a report addressing a liability issue and the accrual of the cause of action itself. See King v. Nashua Corp., 763 F.2d 332, 333 (8th Cir. 1985) (indicating the relevant inquiry "focuses on the damage and not the discovery of its cause").

Next, we address where the tort claims accrued. As JLG and Powerscreen's reasoning goes, the claims accrued in Kansas even though the cranes failed in Missouri because a corporation can only be injured through its pocketbook, and BES's principal place of business (and pocketbook) is in Kansas. We disagree. The crane failures caused damage to BES's physical property while the property was located in Missouri. "[W]hen a commercial entity sues for tortious injury to its physical property, the 'injury' takes place for jurisdictional purposes where the property has been damaged." Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 202 (3d Cir. 1998) (quoting Carty v. Beech Aircraft Corp., 679 F.2d 1051, 1065 (3d Cir. 1982)). We believe this rule applies for accrual purposes as well; when a commercial entity sues for injury to its physical property, the claim accrues where the property was damaged.

JLG and Powerscreen contend our decision in Rajala controls and requires us to decide BES's injuries accrued in Kansas. Rajala dealt with a Kansas plastics manufacturing business, U.S.C. Industries, Inc. (U.S.C.I.), allegedly injured by the negligence of Donnelly Meiners Jordan Kline, P.C. (Donnelly), an accounting firm U.S.C.I consulted before purchasing two other Kansas plastics companies. The newly-acquired companies had financial problems which Donnelly failed to discover, and U.S.C.I. eventually declared bankruptcy after infusing substantial amounts of capital into the new companies in an attempt to make them profitable. Rajala, 193 F.3d at 927-28. U.S.C.I's bankruptcy trustee later brought suit against Donnelly in Missouri federal court to recover the damages allegedly caused by Donnelly's advice, arguing "the action originated in Missouri because it was in Missouri where Ernst & Young [an accounting firm U.S.C.I. consulted regarding Donnelly's conduct] appraised U.S.C.I. in some detail as to the extent and specifics of [Donnelly's] alleged wrongs." Id. at 928. We rejected the trustee's claim the actions accrued in Missouri, the place where Ernst & Young gave U.S.C.I. an expert opinion regarding Donnelly's negligence. Instead, we held U.S.C.I. "sustained, ascertained and realized its damages in Kansas [because] U.S.C.I. operated the companies in Kansas [and] felt

-6-

the cash flow crunch allegedly caused by Donnelly's acts and omissions [in Kansas]." Id.

JLG and Powerscreen contend Rajala holds a corporation can only be injured at its corporate headquarters, that is, the place where it feels the economic effects of an injury. We do not read Rajala so generally or broadly. Rajala concerns a purely economic injury to a corporation, without a physical injury precipitating the economic damage. Thus, we do not find Rajala very helpful in resolving an accrual issue where a corporation suffers physical damage to corporate property in one state, but feels the secondary economic effects of the injury in its home state. See Air Prods. And Chems., Inc. v. Eaton Metal Prods. Co., 272 F. Supp. 2d 482, 503 (E.D. Pa. 2003) (discussing several cases which distinguish between the secondary economic effects of a corporate injury and the location of the injury itself).

In Rajala we did not focus solely on the cash-flow crunch U.S.C.I. felt at its corporate headquarters, but also on the place where U.S.C.I. operated the companies it bought as a result of Donnelly's negligent advice. As it happened, both the cash-flow crunch and the company operations occurred in Kansas; thus we did not have to decide which would have controlled for accrual purposes if the two had occurred in different states. In contrast, the pertinent injuries here did occur in different states. The economic injury BES felt at its corporate headquarters flowed from the physical damages it suffered when the cranes failed, just as the cash-flow crunch U.S.C.I. felt at its corporate headquarters flowed from the costs of operating the acquired companies. But here the precipitating physical injury occurred in Missouri, while the resulting economic harm occurred in Kansas. Thus, we have to decide which controls for accrual purposes. As indicated above, we believe a corporate injury accrues at the place where the physical property is damaged, not at the place where the corporation feels the secondary economic effects of the injury.

Perhaps more significantly, <u>Rajala</u> ultimately rejected the very argument JLG and Powerscreen advance in this case. In <u>Rajala</u>, the bankruptcy trustee claimed U.S.C.I.'s injuries accrued in Missouri because that is where Ernst & Young advised U.S.C.I. of the extent and specifics of Donnelly's alleged wrongs. Similarly, JLG and Powerscreen contend BES's injuries accrued in Kansas because that is where Sherry Laboratories advised BES the eye bolt anchor was defective. In <u>Rajala</u>, we viewed that argument "as an attempt to forum shop for a more generous statute of limitations, the very evil to which the Missouri borrowing statute is directed." <u>Rajala</u>, 193 F.3d at 928.

The same observation applies here. The appellees' position, if adopted, would encourage forum shopping. Conceivably, plaintiffs' attorneys could advise clients to visit a state with a favorable statute of limitations for the sole purpose of having an expert send them a report on the extent of their damages during the visit. The plaintiff's cause of action would then originate in that state because that is where an expert advised them of the extent and specifics of the alleged tort. In addition, the statute of limitations would not begin to run until the plaintiff received the expert's report, perhaps years after the actual accident occurred. Such an approach would run counter to the very purpose of Missouri's borrowing statute, and we reject it here just as we did in <u>Rajala</u>.

Having determined the tort claims on the cranes accrued in Missouri, not Kansas, we next determine whether they were timely under Missouri law. The tort claims are subject to a five-year limitations period under Mo. Rev. Stat. § 516.120(4), and are clearly timely. BES filed this lawsuit on November 21, 2000, within five years of both crane failures (December 18, 1995; September 30, 1999).

B.     The Warranty Claims

With respect to the warranty claims, the parties contest a host of issues which we find unnecessary to address.  BES contends 1) Missouri law applies to its breach of warranty claims, 2) it received an express five-year warranty extending to future performance on all structural components for each crane, and 3) it cannot be charged with knowledge of the new crane's defect based on the January 1996 metallurgical report it received on the used crane.  Even if we give BES the benefit of all its arguments, we conclude the warranty claims are untimely.

Giving BES the benefit of Missouri law, the breach-of-warranty claims would be subject to a four-year limitations period under Mo. Rev. Stat. § 400.2-725.[1]  The statute provides a "cause of action accrues when the breach occurs [and a] breach of warranty occurs when tender of delivery is made."  Id.  There is an exception for warranties extending to future performance, in which case "the cause of action accrues when the breach is or should have been discovered."  Id.

BES purchased the new crane on October 17, 1991, with a five-year warranty on all structural components. BES thereafter had at most five years to discover a breach before the warranty expired on October 17, 1996, and then at most another four years until October 17, 2000, to bring suit.  BES filed this suit on November 21, 2000, which is too late even under the most favorable view of the law and the facts in this case.

BES purchased the used crane in February 1992.  The parties dispute whether the used crane had a five-year warranty, and if it did not, BES had only four years from tender of delivery to bring a warranty claim (until February 1996).  Even

---

[1]We note the applicable Kansas statute, Kan. Stat. Ann. 84-2-725, is identical for all material purposes.

assuming the used crane had the five-year extended warranty, it is undisputed BES discovered or should have discovered the defect in the used crane when it received the Sherry Laboratories metallurgical report dated January 8, 1996. Thus, BES had until January 2000 to bring a breach-of-warranty claim on the used crane. BES filed this suit on November 21, 2000, which is too late even assuming the used crane carried the extended five-year warranty.

III

For the reasons stated, we affirm the dismissal of the warranty claims, reverse the dismissal of the strict liability and negligence claims, and remand for further proceedings.[2]

_____

---

[2]We deny Powerscreen's pending motion to supplement the record.