# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3440

———————

| | | |
|---|---|---|
| Great Plains Trust Company, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Union Pacific Railroad Company, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: March 15, 2007
Filed: June 29, 2007

———————

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

———————

BOWMAN, Circuit Judge.

Great Plains Trust Company, which is chartered and based in Kansas, filed this class action against Union Pacific Railroad Company, which is doing business in Missouri, alleging breach of contract, fraud, and unjust enrichment. Diversity jurisdiction is proper in this case under 28 U.S.C. § 1332 (2000). The District Court[1] granted Union Pacific's motion to dismiss, and Great Plains appeals. We affirm the judgment of the District Court.

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

I.

"We recite the facts as alleged in the complaint, viewing them in the light most favorable to the plaintiff[]." Davenport v. Farmers Ins. Group, 378 F.3d 839, 841 (8th Cir. 2004). In 1955, Union Pacific's predecessor company issued debentures accompanied by an indenture setting forth the company's payment obligations. In 1997, Union Pacific assumed these obligations. According to the indenture, interest on the debentures is payable annually on April 1 at a rate of five percent of the principal amount of the outstanding debentures. This interest is payable from Union Pacific's available net income (ANI), which is computed on a calendar-year basis according to the accounting rules of the Surface Transportation Board (STB). The interest payment due on April 1, 1999, totaled $5 million. On March 12, 1999, Union Pacific sent a letter and a computation of its ANI to the debenture trustee indicating that it lacked sufficient funds to make the payment. The computation stated that Union Pacific had $580 million in income available to pay fixed charges for 1998. Union Pacific's Annual Report to the STB, however, indicated that Union Pacific had $628 million in income available for that period. The STB calculation left Union Pacific with a net after-tax income of $27 million for 1998. Union Pacific did not make the interest payment due April 1, 1999.

On January 10, 2006, Great Plains, the holder of $500,000 of debentures, filed this class-action complaint alleging that Union Pacific is liable for breach of contract, fraud, and unjust enrichment on account of its failure to make the 1999 interest payment. The District Court dismissed all claims against Union Pacific, concluding that each claim was barred by the applicable statute of limitations and, alternatively, that Great Plains had failed to comply with certain prerequisites set forth in the indenture before filing suit.

We review a district court's grant of a motion to dismiss de novo, taking the well-pleaded material factual allegations in the complaint as true. Katun Corp. v.

Clarke, 484 F.3d 972, 975 (8th Cir. 2007). In so doing, we may consider documents attached to the complaint and matters of public and administrative record referenced in the complaint. Id.; Deerbrook Pavilion, LLC v. Shalala, 235 F.3d 1100, 1102 (8th Cir. 2000), cert. denied, 534 U.S. 992 (2001).

## II.

We first consider whether Great Plains was required to comply with the procedures set forth in the indenture before filing suit. The indenture contains a no-action clause providing that "[n]o holder of any debenture . . . shall have any right by virtue or by availing of any provision of this indenture to institute any suit, action or proceeding . . . for the collection of any sum due from the Company hereunder on account of principal or interest" without first requesting action by the debenture trustee. Indenture at 34. Great Plains does not contend that it complied with this clause before filing suit. The indenture also contains a clause that provides:

> Nothing contained in this indenture or in the debentures shall affect or impair the obligation of the Company, which is unconditional and absolute, to pay the principal of and interest on the debentures . . . or affect or impair the right, which is also unconditional and absolute, of the holders of the debentures to receive payment thereof on or after the respective due dates thereof or to institute suit for the enforcement of any such payment on or after such respective due dates by virtue of said debentures.

Id. at 34–35. This provision implements Section 316(b) of the Trust Indenture Act of 1939 (15 U.S.C. § 77ppp(b)), which prohibits the purported restriction by an indenture of certain rights of security holders, including the right to sue for unpaid interest. See Cruden v. Bank of N.Y., 957 F.2d 961, 968 (2d Cir. 1992). The District Court held that the no-action clause was controlling and therefore Great Plains's action was barred, reasoning that the Section 316 clause would apply only when the principal amount of the debentures was due.

-3-

Great Plains argues that the District Court erred in this regard. The question is whether the no-action clause or the Section 316 clause is controlling with respect to the annual interest owed on the debentures. We hold that Section 316 grants Great Plains the absolute right to sue for unpaid interest without having to first comply with the no-action clause. We find persuasive the conclusion reached by other courts that a no-action clause may not override a debenture holder's absolute right guaranteed by Section 316 to seek payment of overdue interest. See Cruden, 957 F.2d at 968; UPIC & Co. v. Kinder-Care Learning Ctrs., Inc., 793 F. Supp. 448, 454–55 & n.8 (S.D.N.Y. 1992); In re Envirodyne Indus., Inc., 174 B.R. 986, 992–93 (Bankr. N.D. Ill. 1994). Courts have reached this conclusion because Section 316 "is mandatory in order to assure the negotiability of the debentures by making certain that the promise to pay contained therein was unconditional." Envirodyne, 174 B.R. at 993; see also Watts v. Missouri-Kansas-Texas R.R. Co., 383 F.2d 571, 578 (5th Cir. 1967) ("[N]egotiability . . . is reduced when no-action clauses are construed to limit suits upon interest obligations.").

Union Pacific contends that Quirke v. St. Louis-San Francisco Railway Co., 277 F.2d 705 (8th Cir.), cert. denied, 363 U.S. 845 (1960), requires a different result. In Quirke, this Court held that a bondholder was required to comply with a no-action clause before bringing suit to challenge the company's purchase of stock. Id. at 709. Quirke did not, however, involve a claim for unpaid interest on debentures and did not implicate Section 316. Quirke therefore has no bearing on the interplay between Section 316 and a no-action clause in a suit for unpaid interest on debentures.

Accordingly, Great Plains was not required to exhaust the procedure of the no-action clause before filing this suit, and the District Court was incorrect in holding to the contrary.

III.

We next consider whether Great Plains's claims are barred by the applicable statutes of limitation. The parties dispute whether the Kansas or Missouri statutes of limitation apply to this case. Great Plains argues for application of Missouri law, as it contends that each relevant Missouri statute of limitation is longer than its Kansas counterpart. Compare Mo. Rev. Stat. §§ 516.110(1) (2000) (written contracts to pay money: ten years), 516.120(1) (unjust enrichment: five years), 516.120(5) (fraud: five years) with Kan. Stat. Ann. §§ 60-511(1) (2005) (contracts: five years), 60-512(1) (unjust enrichment: three years), 60-513(a)(3) (fraud: two years). The District Court held that the Kansas statutes of limitation applied to Great Plains's claims and that the claims were barred under these statutes.

A federal court sitting in diversity applies the statute-of-limitations rules of the forum. Nettles v. Am. Tel. & Tel. Co., 55 F.3d 1358, 1362 (8th Cir. 1995) (citing Guaranty Trust Co. v. York, 326 U.S. 99, 108–09 (1945)). Missouri has a borrowing statute that provides, "Whenever a cause of action has been fully barred by the laws of the state . . . in which it originated, said bar shall be a complete defense to any action thereon . . . ." Mo. Rev. Stat. § 516.190. The "critical issue" in applying this statute is "determining where a cause of action originated." Nettles, 55 F.3d at 1362. Under the statute, "originated" means "accrued." Thompson v. Crawford, 833 S.W.2d 868, 871 (Mo. 1992) (en banc).

A.

With regard to Great Plains's breach-of-contract claim, the Missouri borrowing statute directs courts to Missouri Revised Statutes Section 516.100 to determine both when and *where* such a claim accrues. See Ferrellgas, Inc. v. Edward A. Smith, P.C., 190 S.W.3d 615, 623 (Mo. Ct. App. 2006) (per curiam). Section 516.100 provides that a cause of action accrues not "when the wrong is done or the technical breach of

contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." Accordingly, a cause of action accrues *where* damages are capable of ascertainment. "[D]amages are 'sustained and capable of ascertainment' when the fact of damage can be discovered or made known." Jordan v. Willens, 937 S.W.2d 291, 294 (Mo. Ct. App. 1996) (emphasis omitted). Specifically in a breach-of-contract suit, the cause of action "accrues upon a defendant's failure to do the thing at the time and in the manner contracted." Davis v. Laclede Gas Co., 603 S.W.2d 554, 555 (Mo. 1980) (en banc) (citation and quotations omitted). And although no Missouri state court has directly addressed the issue, it appears that for failure-to-pay cases, the cause of action accrues where payment was to be made. See Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc., 934 F. Supp. 302, 305 (S.D. Iowa 1996) (applying Missouri law and stating that Missouri case law "would suggest that a breach of promise claim originates where the performance should have taken place, but did not"), aff'd, 120 F.3d 893 (8th Cir. 1997); Hailey v. Yellow Freight Sys., Inc., 599 F. Supp. 1332, 1336 (W.D. Mo. 1984) ("[I]n breach of contract actions the cause ordinarily 'originates' or 'accrues,' for purposes of a 'borrowing' statute, where the breach occurs, with that place being the place of performance."); In re Master Mortgage Inv. Fund, Inc., 151 B.R. 513, 517 (Bankr. W.D. Mo. 1993) (applying the Missouri borrowing statute and holding that in a tort action for failure to make a payment as required by contract, the cause of action accrued at the place where payment was to be made).

Great Plains and Union Pacific dispute where the interest payment was to be made according to the indenture, which provides,

> [D]ebentures . . . shall be payable both as to principal and interest at the office or agency of the Company in . . . New York, or, at the option of the registered holder thereof, at the office or agency of the Company in St. Louis, Missouri, in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts . . . . Interest on debentures shall be paid by

-6-

> check to the order of the registered holder, mailed to the address shown by the records of the Company.

Indenture at 10–11.

The indenture requires that the interest payment be mailed to the holder's address, and since Great Plains is located in Kansas, payment to Great Plains can only be mailed to its Kansas address as shown in Union Pacific's records. The plain language of the provision providing for payment at Union Pacific's office in New York or St. Louis refers not to a typical payment by check, but rather to an in-person cash payment. Because the interest payment was to be mailed to Great Plains in Kansas, and because Great Plains did not exercise its right to payment in New York or in Missouri, Great Plain's breach-of-contract claim originated in Kansas. See Master Mortgage, 151 B.R. at 517 (holding that a tort action originated in Kansas where the plaintiff's alleged injury resulted from the defendant's failure to make payment as required by contract at the plaintiff's place of business in Kansas); Nat'l Heritage Life Ins. Co. v. Frame, 41 S.W.3d 544, 553 (Mo. Ct. App. 2001) (holding that a cause of action originated in Texas where the defendants were required to pay the plaintiff and the plaintiff was located in Texas).

Great Plains contends that Building Erection Services, Inc. v. JLG, Inc., 376 F.3d 800 (8th Cir. 2004) ("BES"), requires a different result. In BES, this Court held that a tort claim originated in Missouri, which was the site of the physical injury giving rise to the cause of action. Id. at 805. This Court rejected the defendants' argument that "a corporation can only be injured at its corporate headquarters" and that a claim against a corporation must originate where the corporation is located. Id. at 804. Great Plains argues that BES stands for the proposition that a claim against a corporation cannot originate where the corporation feels the economic effects of the injury.

The problem with Great Plains's contention is that unlike <u>BES</u>, this case involves a purely economic injury—the non-payment of interest. This case is more like <u>Rajala v. Donnelly Meiners Jordan Kline, P.C.</u>, 193 F.3d 925 (8th Cir. 1999), which involved a claim of negligent consultation against an accounting firm. <u>Id.</u> at 927. In <u>Rajala</u>, this Court held that the cause of action originated in Kansas because the plaintiff company was located in Kansas and accordingly "felt the cash flow crunch" there. <u>Id.</u> at 928. Thus, for cases involving a purely economic injury, as opposed to a physical accident with economic consequences, a cause of action originates where the plaintiff is financially damaged, which for a corporation is often its place of business. <u>See</u> <u>BES</u>, 376 F.3d at 804 ("<u>Rajala</u> concerns a purely economic injury to a corporation, without physical injury precipitating the economic damage."). This case involves a purely economic injury that Great Plains could only have ascertained at its place of business in Kansas. Therefore, the Kansas statute of limitations applies to Great Plains's breach-of-contract claim.

Under Kansas law, a cause of action for breach of contract must be brought within five years. Kan. Stat. Ann. § 60-511(1). A breach-of-contract claim accrues when the contract is breached, irrespective of the plaintiff's knowledge or injury. <u>Pizel v. Zuspann</u>, 795 P.2d 42, 54 (Kan. 1990). Great Plains's breach-of-contract claim accrued on April 1, 1999, when Union Pacific did not make the interest payment as required by the indenture. Because Great Plains did not file this suit until January 10, 2006, the breach-of-contract claim is untimely under the Kansas statute of limitations.

B.

With regard to Great Plains's unjust-enrichment claim, under Missouri law, such a claim also accrues according to Section 516.100. <u>See</u> <u>Estate of Cates v. Brown</u>, 973 S.W.2d 909, 913 & n.4 (Mo. Ct. App. 1998) (per curiam). Therefore, the Kansas statute of limitations applies to Great Plains's unjust-enrichment claim as well.

A cause of action for unjust enrichment must be brought within three years. Kan. Stat. Ann. § 60-512(1); Stehlik v. Weaver, 482 P.2d 21, 27 (Kan. 1971). An unjust-enrichment claim accrues "when the elements are present and the plaintiff could have filed and maintained a successful suit." Dodson Int'l Parts, Inc. v. Hiatt, No. 02-4042-SAC, 2003 WL 22327176, at *7 (D. Kan. Sept. 25, 2003) (unpublished) (citing Pancake House, Inc. v. Redmond, 716 P.2d 575, 579 (Kan. 1986)). The elements of an unjust-enrichment claim are: (1) the plaintiff confers a benefit on the defendant; (2) the defendant knows of the benefit; and (3) the defendant retains the benefit inequitably. J.W. Thompson Co. v. Welles Prods. Corp., 758 P.2d 738, 745 (Kan. 1988). Great Plains's claim for unjust enrichment also accrued on April 1, 1999, as Great Plains alleges in its complaint that Union Pacific received an improper benefit on account of its failure to make the interest payment. Cf. Hartman v. Stumbo, 408 P.2d 693, 696 (Kan. 1965) (concluding that a cause of action for unjust enrichment accrued when payment was made to defendant). Since Great Plains did not file this suit until 2006, the claim is untimely under Kansas law.

C.

With regard to Great Plains's fraud claim, the Missouri borrowing statute directs courts to Missouri Revised Statutes Section 516.120(5), rather than Section 516.100, to determine when and *where* a fraud claim accrues. See Nettles, 55 F.3d at 1364–65. Section 516.120(5) provides that a cause of action for fraud accrues upon "the discovery by the aggrieved party . . . of the facts constituting the fraud." This statute is intended to promote due diligence by plaintiffs in discovering fraud, as "[w]here the means for discovery exist, a plaintiff is deemed to know of the fraud." Schwartz v. Lawson, 797 S.W.2d 828, 832 (Mo. Ct. App. 1990). Accordingly, a cause of action for fraud accrues in the state where the plaintiff should have discovered the facts constituting the fraud.

Great Plains should have discovered Union Pacific's alleged fraud at Great Plains's office in Kansas. Each act allegedly constituting fraud was discoverable with due diligence during the ordinary course of Great Plains's business. Specifically, Great Plains points to Union Pacific's letter and attachments of March 12, 1999, as causing Great Plains's detrimental reliance. Because Great Plains is only located in Kansas, Great Plains could only have reviewed and relied upon these documents during the course of its business in Kansas. Additionally, Great Plains claims that Union Pacific's Annual Report to the STB shows that Union Pacific's ANI calculation was fraudulent. Again, through the exercise of ordinary diligence, Great Plains should have discovered this information during the course of its business in Kansas. Accordingly, the Kansas statute of limitations applies to Great Plains's fraud claim.

A cause of action for fraud must be brought within two years. Kan. Sat. Ann. § 60-513(a)(3). A cause of action for fraud accrues when the fraud could have been discovered with reasonable diligence. Waite v. Adler, 716 P.2d 524, 527 (Kan. 1986). Great Plains could have discovered the alleged fraud: when Union Pacific sent its letter and attachments on March 12, 1999; when Union Pacific filed its report with the STB on March 31, 1999; or, at the latest, when Union Pacific failed to make the interest payment on April 1, 1999. The indenture specifically provides that Great Plains could have inspected Union Pacific's ANI computation after it was sent to the trustee on March 12, 1999. Moreover, Union Pacific's Annual Report to the STB, which Great Plains alleges is indicative of fraud, is a publicly available document that Great Plains could have examined beginning March 31, 1999. See United States v. Eagleboy, 200 F.3d 1137, 1140 (8th Cir. 1999) (a court may take judicial notice of agency documents). Because Great Plains had constructive notice of the alleged fraud in 1999 and did not file this suit until 2006, Great Plains's fraud claim is untimely under Kansas law.

IV.

Great Plains contends that the statutes of limitation should be tolled for two separate reasons. First, Great Plains states that Union Pacific fraudulently concealed the correct ANI for 1998 and that Great Plains "was unable to discover Union Pacific's fraudulent actions and concealment until shortly before filing this lawsuit." Am. Compl. at ¶ 40. Second, Great Plains argues that the filing of previous class actions tolled the statutes of limitation.

Because this case arises under our diversity jurisdiction, we apply state tolling law but also apply federal procedural law. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938); Carter v. Washington Metro. Area Transit Auth., 764 F.2d 854, 855 (D.C. Cir. 1985). Under Missouri law, "It is a generally accepted rule that when borrowing the statute of limitations of a foreign state, the applicable tolling provision of that state is borrowed as well." Thompson, 833 S.W.2d at 872 (citing Devine v. Rook, 314 S.W.2d 932, 935 (Mo. Ct. App. 1958)); see Davis v. Liberty Mut. Ins. Co., 55 F.3d 1365, 1367 (8th Cir. 1995). Because the Missouri borrowing statute directs that the Kansas statutes of limitation applies to these claims, we apply the tolling rules of Kansas.

A.

Under Kansas law, in order to toll a statute of limitations on account of fraudulent concealment, the defendant must have affirmatively prevented discovery of the cause of action. Baker v. Bd. of Regents, 991 F.2d 628, 633 (10th Cir. 1993) (citing Friends Univ. v. W.R. Grace & Co., 608 P.2d 936, 941 (Kan. 1980)). Kansas law requires a plaintiff seeking to toll a statute for fraudulent concealment to "'explain why due diligence did not lead or could not have led to discovery of the facts and the cause of action.'" Friends, 608 P.2d at 941 (quoting 51 Am. Jur. 2d, Limitation of Actions § 148 (1970)). In other words, Kansas law will not toll a statute of limitations

where the plaintiff could have discovered the claim. <u>See</u> <u>Miller v. Foulston, Siefkin, Powers & Eberhardt</u>, 790 P.2d 404, 417 (Kan. 1990).

Additionally, federal procedural law requires that allegations of fraud, including fraudulent concealment for tolling purposes, be pleaded with particularity. <u>See</u> Fed. R. Civ. P. 9(b); <u>Conerly v. Westinghouse Elec. Corp.</u>, 623 F.2d 117, 120 (9th Cir. 1980); <u>Evans v. Rudy-Luther Toyota, Inc.</u>, 39 F. Supp. 2d 1177, 1185 n.5 (D. Minn. 1999) (collecting cases). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir.), <u>cert. denied</u>, 498 U.S. 941 (1990). And although we must take all factual allegations as true when considering a motion to dismiss, we need not accept conclusory legal allegations as true. <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

Great Plains's conclusory allegation that it "was unable to discover Union Pacific's fraudulent actions and concealment until shortly before filing this lawsuit" fails to meet the particularity requirements of Rule 9(b). Great Plains did not state what actions Union Pacific took to fraudulently conceal the cause of action. Nor did Great Plains state when or how Union Pacific perpetrated its alleged concealment. Great Plains's other conclusory allegation—that Union Pacific fraudulently concealed its correct ANI for 1998—also fails to allege how or when this concealment occurred. Moreover, Great Plains's fraudulent-concealment allegation falls short of the tolling requirements of Kansas law. Great Plains has not explained in its complaint or in its briefs why it could not have discovered its claims within the statutory period. Without more, even at this stage of litigation, Great Plains's first tolling argument fails.

B.

Turning to Great Plains's class-action tolling argument, on March 28, 2002, a case captioned <u>Ernest W. Carlson v. Union Pacific Railroad Co.</u>, was filed in the Superior Court of the District of Columbia. In that case, the plaintiff on behalf of a purported class of debenture holders asserted a claim for breach of contract against Union Pacific for the missed 1999 interest payment. The case was removed to the United States District Court for the District of Columbia. On August 22, 2003, the case was dismissed without prejudice because the court lacked personal jurisdiction over Union Pacific. No class-certification hearing was held before the case was dismissed.

On September 23, 2003, a case captioned <u>Ernest W. Carlson v. Union Pacific Railroad Co.</u>, was filed in the United States District Court for the District of Nebraska. The plaintiff again asserted the breach-of-contract claim based on the 1999 interest payment against Union Pacific on behalf of the purported class of debenture holders. On January 26, 2004, the plaintiff voluntarily dismissed the complaint. No class-certification hearing was held in that case either. Great Plains contends that the pendency of these cases tolled the statutes of limitation in this case.[2]

---

[2]We note at the outset of our discussion of class-action tolling that even if Great Plains's argument that the applicable statutes of limitation were suspended during the pendency of the previous class actions (approximately 22 months) was successful, Great Plains's fraud and unjust-enrichment claims would still be untimely. These claims accrued at the latest on April 1, 1999, while the instant suit was not filed until January 10, 2006. Because the applicable statutes of limitation are two years (fraud) and three years (unjust enrichment), these claims would still be untimely despite the pendency of the class actions. Accordingly, our analysis of the tolling effect, if any, of the previous class actions on this suit is limited to Great Plains's breach-of-contract claim.

-13-

Before proceeding further, we must consider whether we can adequately address Great Plains's argument at this stage of litigation. Great Plains asserts that In re General American Life Insurance Co. Sales Practices Litigation, 391 F.3d 907 (8th Cir. 2004), requires us to remand this case to the District Court to consider whether class-action tolling is warranted. In that case, this Court remanded for consideration of whether cross-jurisdictional tolling was appropriate. Id. at 915. In this case, however, the circumstances presented allow us to determine whether the previous class actions tolled the statutes of limitation and if so, the effect of this tolling. This question can be answered by reference to the records of the previous class actions, and we may take judicial notice of proceedings in other courts that relate directly to matters at issue. Conforti v. United States, 74 F.3d 838, 840 (8th Cir.), cert. denied, 519 U.S. 807 (1996). Accordingly, we will proceed with our analysis.

In American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), the Supreme Court held that an applicable statute of limitations is tolled during the pendency of a class action for putative class members who intervene after the denial of class certification—at least where certification is denied for failure to meet the numerosity requirement of Rule 23 of the Federal Rules of Civil Procedure. Id. at 552–53. The American Pipe rule is designed to protect the federal procedural interest by preventing duplicative litigation from purported class members during the period that certification is pending. Id. at 553. The American Pipe rule has been extended to purported members of the class who later file individual suits rather than intervene. Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983). Whether the American Pipe rule applies to subsequent class actions, however, depends on the reasons for the denial of certification of the predecessor action. See Yang v. Odom, 392 F.3d 97, 111 (3d Cir. 2004) ("[W]here class certification has been denied solely on the basis of the lead plaintiffs' deficiencies . . . not because of the suitability of the claims for class treatment, American Pipe tolling applies to subsequent class actions."), cert. denied, 544 U.S. 1048 (2005); Catholic Soc. Servs., Inc. v. INS, 232 F.3d 1139, 1149 (9th Cir. 2000) (en banc) (holding that the filing of a previous class action tolled the applicable

-14-

statute for a later class action where the later action was not an attempt to relitigate the denial of certification or correct a procedural deficiency in the purported class).[3]

Kansas class-action law is modeled after federal law, and Kansas has accordingly adopted the <u>American Pipe</u> rule.  <u>See</u> <u>Waltrip v. Sidwell Corp.</u>, 678 P.2d 128, 131–32 (Kan. 1984); <u>see also</u> <u>Steele v. Sec. Benefit Life Ins. Co.</u>, 602 P.2d 1305, 1309 (Kan. 1979).  Therefore, we may decide whether application of the <u>American Pipe</u> rule is appropriate in this case by reference to both Kansas and federal law, and it is not necessary for us to balance the interests of federal procedural law and state substantive law.  <u>See</u> <u>Adams Pub. Sch. Dist. v. Asbestos Corp.</u>, 7 F.3d 717, 719 (8th Cir. 1993).

In <u>Waltrip</u>, the plaintiffs filed suit in Kansas and argued that the statute of limitations was tolled on account of a previously filed class action in which certification of the class was denied.  678 P.2d at 131.  The Supreme Court of Kansas applied the <u>American Pipe</u> rule and held that the pendency of the first class action preserved the rights of the potential class members under the Kansas statutes of limitation.  <u>Id.</u> at 133.  The court then held that the effect of the <u>American Pipe</u> rule under Kansas law was to preserve the class members' right to file suit after the dismissal of the first class action within the time allowed by the Kansas savings statute, Kan. Stat. Ann. § 60-518.  <u>Id.</u>; <u>see</u> <u>Chardon v. Fumero Soto</u>, 462 U.S. 650, 652 n.1 (1983) (explaining that when a statute of limitations is tolled, the "tolling effect" may suspend the statute of limitations during the relevant time period, renew the

---

[3]We note that there was no certification hearing—much less a denial of certification—in either of the previous class actions, but rather a dismissal without prejudice and a voluntary dismissal.  This case therefore does not include the typical circumstances that trigger the <u>American Pipe</u> rule.  We decline to determine whether this fact is material, however, in light of the application of the Kansas savings statute, discussed <u>infra</u>.  That is, we will assume, for the sake of discussion, that the previous class actions warrant application of the <u>American Pipe</u> rule in this case, despite the fact that no certification denial is involved.

statute when tolling ceases, or trigger a savings statute without regard to the original limitations period).  In Adams this Court considered "the novel question of how the American Pipe doctrine applies in diversity cases when the applicable state law does not provide for tolling," and concluded:

> When the federal courts look to state law for the statute of limitations, the federal interest in procedural efficiency: 'is vindicated as long as each unnamed plaintiff is given as much time to intervene or file a separate action as he would have under a state savings statute applicable to a party whose action has been dismissed for reasons unrelated to the merits, or, in the absence of a statute, the time provided under the most closely analogous state tolling statute.'

7 F.3d at 718–19 (quoting Chardon, 462 U.S. at 661).  In Chardon, the Supreme Court held that where the federal court looked to Puerto Rican statute-of-limitations law, the application of a Puerto Rican tolling provision that renewed the limitations period after the denial of class-action certification sufficiently protected the federal procedural interest.  462 U.S. at 661.

These cases indicate that we must determine whether Great Plains was given enough time to refile this action after the previous class actions were dismissed according to the Kansas savings statute.  If Great Plains was afforded this opportunity, then the federal interest underlying the American Pipe rule has been sufficiently protected.

Under the Kansas savings statute, a plaintiff has six months to re-file following a dismissal of a class action that is not on the merits.  Kan. Stat. Ann. § 60-518; see Waltrip, 678 P.2d at 133.  Here, the first class action was dismissed on August 22, 2003, and the second class action was dismissed on January 26, 2004, but Great Plains did not file this class action until January 10, 2006.  Therefore, this suit would not have been timely under the Kansas savings statute.  Because Great Plains waited

nearly two years after the dismissal of the second class action to file this suit, Great Plains cannot claim that it was unfairly deprived of the ability to sue on account of the previous class actions. The federal procedural interest has been adequately protected in this case by application of the Kansas savings statute; therefore, Great Plains's breach-of-contract claim remains untimely.

V.

For the stated reasons, the judgment of the District Court is affirmed.

_____